UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, AMERICAN PETROLEUM INSTITUTE, NATIONAL MINING ASSOCIATION, and THE BUSINESS COUNCIL OF NEW YORK STATE, INC., <br><br>*Plaintiffs*, <br><br>v. <br><br>LETITIA JAMES, in her official capacity as New York Attorney General, and AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation, <br><br>*Defendants*. | Civil Action No. 1:25-cv-01307-BKS-DJS <br><br>**DECLARATION OF VIJAY SWARUP** |

I, Vijay Swarup, declare as follows:

1. I am an employee of Exxon Mobil Corporation ("ExxonMobil") on special assignment and most recently I served as the Senior Director, Climate Strategy & Technology, Corporate Strategic Planning at ExxonMobil, a publicly traded company engaged in global fossil fuel production, refining, marketing, and research. In that capacity, I oversaw ExxonMobil's strategy to reduce greenhouse gas emissions and to address and mitigate certain risks of climate change. This includes assessing climate policy and advocacy initiatives, along with the interplay between policy and the advancement and implementation of technology. ExxonMobil's business address is 22777 Springwoods Village Parkway, Spring, Texas 77389.

2. I am offering this declaration in support of the Chamber of Commerce of the United States ("the Chamber"), the American Petroleum Institute ("API"), and the Business Council of New York State, Inc. ("BCNYS") in the above-captioned case.

3. I am over 18 years old. This Declaration is based upon my personal knowledge and/or upon my review of business records of ExxonMobil.

4. ExxonMobil is one of the largest publicly traded energy companies in the world. ExxonMobil engages in the production, refining, and marketing of fossil fuels and related products. ExxonMobil and its affiliates and subsidiaries operate across the United States and internationally, and its products serve consumers, businesses, and governments worldwide.

5. ExxonMobil is a member of the Chamber, API, and BCNYS.

6. I am aware of New York's Climate Change "Superfund" Act, S.2129B, Chapter 679, Laws of 2024 as amended by S.824 ("Act" or "New York's Act") and of the severe effect it will have on many of the Chamber, API, and BCNYS's members.

7. The Act defines "[r]esponsible part[ies]," as "any entity (or a successor in interest to such entity described herein), which, during any part of the covered period, was engaged in the trade or business of extracting fossil fuel or refining crude oil and is determined by the department to be responsible for more than one billion tons of covered greenhouse gas emissions." N.Y. Env't Conservation Law § 76-0101(21). This definition does not include "any person who lacks sufficient contacts with the state to satisfy the due process clause of the United States Constitution." *Id.*

8. The Act imposes "cost recovery demands" on "responsible parties." Those cost recovery demands are premised on "[c]overed greenhouse gas emissions," which means "with respect to any entity, the total quantity of greenhouse gas emissions, expressed in metric tons of carbon dioxide equivalent, as defined in section 75-0101 of this chapter, attributable to the total amount of fossil fuels extracted by that entity during the covered period, as well as the total amount of crude oil refined by that entity during the covered period." § 76-0101(8). The Act specifies that

"covered greenhouse gas emissions include those emissions attributable to all fossil fuel extraction and refining worldwide by such entity and are not limited to such emissions within the state." *Id.*

9. Each responsible party's cost recovery demand is calculated as follows: "the cost recovery demand shall be equal to an amount that bears the same ratio to the cost recovery amount [$75 billion] as the responsible party's applicable share of covered greenhouse gas emissions bears to the aggregate applicable shares of covered greenhouse gas emissions of all responsible parties." § 76-0103(3)(b). The cost recovery demand also does not reflect an accurate balancing of the severity and extent of any alleged harm from greenhouse gas emissions against the significant social value and utility fossil fuels have provided to the people and to the State of New York.

10. My understanding is that under the Act, the New York Department of Environmental Conservation is required to issue a cost recovery demand to any entity it identifies as a responsible party.

11. New York officials have made clear that ExxonMobil will be a responsible party under the Act.

12. The legislative history of the Climate Change Superfund Act makes clear that ExxonMobil is among the companies targeted by the statute. A memorandum circulated by the Act's sponsors—Senator Liz Krueger and Assemblymember Jeffrey Dinowitz—includes an "Approximate List of Covered Companies," which explicitly names "Exxon Mobil." *See* [Memorandum from Sen. Liz Krueger and Assm. Jeffrey Dinowitz to Interested Parties (Oct. 20, 2023)](#).

13. Additional references to ExxonMobil appear throughout the legislative record. For instance, during the Assembly's June 7, 2024, Chamber debate, Assemblymember Dinowitz stated that "Exxon Mobil," among others, would "have to participate" in paying penalties under the Act. *See* [N.Y. State Assembly Debate, 2023–24 Legislative Session, at 3085 (June 7, 2024)](#). Moreover,

3

the official New York State Assembly memorandum in support of the legislation specifically mentions "ExxonMobil" in discussing its capital investments in low-carbon energy and its profitability—both cited as justification for the Act's cost recovery framework. *See* [Memorandum in Support of Legislation A3351B](#).

14. Therefore, it is clear that New York intends to and will issue a cost recovery demand to ExxonMobil among other energy producers under the Act.

15. Consequently, our internal team of engineers, analysts, planners, and accountants will need to invest significant resources to assess New York's cost recovery demand against ExxonMobil. As a part of this effort, the company must actively collect and rigorously analyze comprehensive global data on extraction and refining activities throughout the relevant period in order to determine and validate the percentage of emissions purportedly attributable to ExxonMobil.

16. Absent an injunction barring the State from enforcing the Act against ExxonMobil, ExxonMobil will incur irrecoverable compliance costs.

17. The consequences of this law are immediate and severe—ExxonMobil will be required to take significant steps to prepare for compliance with New York's Act. These steps include the assembly of a multidisciplinary team of legal, scientific, planning, environmental, accounting, and policy personnel to evaluate the methodology and calculus of determination of greenhouse gases under the Act. This includes identifying and reviewing twenty-five years of extraction and refining data, including emissions data and global operations records. ExxonMobil also will be required to model various cost recovery scenarios based on anticipated rulemaking to assess potential liability and prepare for cost recovery demands.

18. The imposition of the cost recovery demand on ExxonMobil and other companies is poised to significantly affect the U.S. fossil fuel industry. New York's law specifies that it will recover

the full $75 billion, adding to the billions (or tens of billions) of dollars already expected to be required under Vermon's Climate "Superfund" Act, S.259. These financial burdens will primarily fall on U.S.-based companies. In contrast, foreign entities—particularly those owned by sovereign governments—are likely to avoid these costs due to jurisdictional limitations that prevent enforcement by state authorities. The New York Act, and likewise Vermont's legislation, will place U.S. fossil fuel companies, including ExxonMobil, at a substantial competitive disadvantage, both domestically and globally.

19. Preparing for compliance with the Act must start well before New York issues a cost recovery demand, given that it will take more than six months to hire and organize employees, consultants, and outside counsel, collect and review data, and develop internal strategies and systems for completing tasks needed to ensure compliance.

20. Further, the Department of Environmental Conservation is required to adopt rules for implementing the Act. § 76-0103(4)(a). ExxonMobil will have to spend resources to participate in that rulemaking process, including analyzing any proposed rules, commenting on proposed rules, participating in any public hearings on the rules, and analyzing the potential impact of final rules. The costs to participate in the rulemaking process required by the unlawful Act will require ExxonMobil to take steps such as hiring outside counsel or consultants, rearranging employee priorities, and compiling information and data to support comments.

21. ExxonMobil also will soon be required to devote substantial resources to responding to information requests from the New York Department of Environmental Conservation. Under the Act, the Department is authorized to demand detailed historical information from ExxonMobil—including data on past practices, production, extraction, refining, emissions, and other relevant

activities—to determine whether the company qualifies as a "responsible party" and, if so, to calculate its covered greenhouse gas emissions. *See* § 76-0103(3)(d).

22. Importantly, the Department is obligated to publish its first evaluation by January 1, 2026, which must include a list of responsible parties and their respective cost recovery demands. *See* § 76-0103(10)(a)-(b). To meet this statutory deadline, the Department will inevitably seek information from ExxonMobil and other entities in the coming months. In turn, ExxonMobil will be compelled to allocate significant resources to comply with these demands—potentially involving internal data collection and review, deployment of employee manpower, engagement of external consultants, and retention of outside counsel to ensure thorough and accurate compliance.

23. In parallel, ExxonMobil must prepare to defend against the Act's payment demands. This preparation includes hiring counsel to research and develop defenses, review potential constitutional and statutory challenges, and advise on strategy. These efforts require substantial legal fees now, because effective defenses depend on advance investigation and expert analysis. Waiting until a payment demand is issued would compromise ExxonMobil's ability to effectively respond within required timeframes.

24. In short, the Act imposes imminent and irreparable harm on ExxonMobil. Without the Act, ExxonMobil would not face these costs or the diversion of resources. So long as the Act remains in force and its threat persists, ExxonMobil must continue to devote significant time, money, and personnel to compliance and defense preparation, with no possibility of recovering those losses due to New York's sovereign immunity.

25. Additionally, the State of New York's cost recovery demands will result in notable consequences for ExxonMobil, its projects, and its planning. These reallocations could also strain existing project timelines and impact ExxonMobil's strategic initiatives, emissions reduction, and

low carbon solutions. To put it simply the State of New York's significant cost recovery demands would have to be paid, and the funds to make that payment would have to come from somewhere, forcing energy producers like ExxonMobil to make strategic business decisions about capital investments, production volumes, planning, prices, contracts, and personnel.

26. ExxonMobil supports the relief sought by the Plaintiffs. An order from the U.S. District Court for the Northern District of New York declaring that the Act is unconstitutional and enjoining enforcement of the Act against members of the Chamber of Commerce of the United States of America, the American Petroleum Institute, and the Business Council of New York State would protect ExxonMobil from being forced to incur these irrecoverable costs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 29, 2025, in Spring, Texas.

By: _____
Vijay Swarup