**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STATE OF WEST VIRGINIA, et al.,

                              Plaintiffs,                    1:25-cv-00168 (BKS/DJS)

v.

LETITIA JAMES, et al.,

                              Defendants.

**Appearances:**

*For Plaintiff State of West Virginia:*
John B. McCuskey
Attorney General of West Virginia
Michael R. Williams
Solicitor General
Caleb B. David
Deputy Solicitor General
Spencer J. Davenport
Assistant Solicitor General
Office of the Attorney General of West Virginia
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301

*For Plaintiff State of Alabama:*
Steve Marshall
Attorney General of Alabama
Robert M. Overing
Deputy Solicitor General
Office of the Attorney General of Alabama
501 Washington Avenue
Montgomery, AL 36130

*For Plaintiff State of Arkansas:*
Tim Griffin
Attorney General of Arkansas
Autumn Hamit Patterson
Solicitor General
Office of the Arkansas Attorney General

323 Center St., Suite 200
Little Rock, AR 72201

*For Plaintiff State of Georgia:*
Christopher M. Carr
Attorney General of Georgia
Stephen J. Petrany
Solicitor General
Elijah O'Kelley
Assistant Solicitor General
Office of the Attorney General of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334

*For Plaintiff State of Idaho:*
Raúl R. Labrador
Attorney General of Idaho
Michael A. Zarian
Deputy Solicitor General
Office of the Idaho Attorney General
700 W. Jefferson St., Suite 210,
P.O. Box 83720
Boise, Idaho 83720

*For Plaintiff State of Iowa:*
Brenna Bird
Attorney General of Iowa
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319

*For Plaintiff State of Kansas:*
Kris W. Kobach
Attorney General of Kansas
Anthony J. Powell
Solicitor General
Office of the Kansas Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597

*For Plaintiff Commonwealth of Kentucky:*
Russell Coleman
Attorney General of Kentucky
Victor B. Maddox

Jason P. Woodall
Kentucky Office of the Attorney General
310 Whittington Parkway, Suite 101
Louisville, KY 40222

*For Plaintiff State of Louisiana:*
Liz Murrill
Attorney General of Louisiana
J. Benjamin Aguiñaga
Solicitor General
Office of the Louisiana Attorney General
1885 N. Third Street
Baton Rouge, LA 70802

*For Plaintiff State of Mississippi:*
Lynn Fitch
Attorney General of Mississippi
Justin L. Matheny
Deputy Solicitor General
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220

*For Plaintiff State of Missouri:*
Andrew Bailey
Attorney General of Missouri
Louis J. Capozzi
Solicitor General
Office of the Missouri Attorney General
815 Olive Street
St Louis, MO 63101

*For Plaintiff State of Montana:*
Austin Knudsen
Attorney General of Montana
Christian B. Corrigan
Solicitor General
Montana Department of Justice
215 N. Sanders Street
Helena, Montana 59601

*For Plaintiff State of Nebraska:*
Michael T. Hilgers
Attorney General of Nebraska
Zachary A. Viglianco
Principal Deputy Solicitor General

Nebraska Department of Justice
2115 State Capitol
Lincoln, Nebraska 68509

*For Plaintiff State of North Dakota:*
Drew H. Wrigley
Attorney General of North Dakota
Philip Axt
Solicitor General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505

*For Plaintiff State of Ohio:*
Dave Yost
Attorney General of Ohio
Mathura Sridharan
Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215

*For Plaintiff State of Oklahoma:*
Gentner Drummond
Attorney General of Oklahoma
Garry M. Gaskins, II
Solicitor General
Office of the Attorney General of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105

*For Plaintiff State of South Carolina:*
Alan Wilson
Attorney General of South Carolina
J. Emory Smith, Jr.
Solicitor General
Office of the Attorney General of South Carolina
Post Office Box 11549
Columbia, South Carolina 29211

*For Plaintiff State of South Dakota:*
Marty J. Jackley
Attorney General of South Dakota
Amanda J. Miiller
Deputy Attorney General
South Dakota Attorney General's Office
1302 E. Highway 14, Suite 1
Pierre, South Dakota 57501

*For Plaintiff State of Tennessee:*
Jonathan Skrmetti
Attorney General and Reporter of Tennessee
J. Matthew Rice
Solicitor General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202

*For Plaintiff State of Texas:*
Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Ralph Molina
Deputy First Assistant Attorney General
Austin Kinghorn
Deputy Attorney General for Legal Strategy
Ryan G. Kercher
Chief, Special Litigation Division
Zachary Berg
Special Counsel
Kathleen T. Hunker
Special Counsel
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

*For Plaintiff State of Utah:*
Derek E. Brown
Attorney General of Utah
Gary T. Wight
Assistant Attorney General
1594 West North Temple, Suite 300
Salt Lake City, Utah 84116

*For Plaintiff State of Wyoming:*
Keith G. Kautz
Attorney General of Wyoming
Ryan Schelhaas
Chief Deputy Attorney General
Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002

*For Plaintiff West Virgina Coal Association and America's Coal Associations:*
Robert G. McLusky
Christopher M. Hunter
Jackson Kelly, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322

*For Plaintiff Gas and Oil Association of West Virginia, Inc.:*
Ivan L. London
William E. Trachman
Alexander Khoury
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO 80227

*For Plaintiff Alpha Metallurgical Resources, Inc.:*
Michael W. Kirk
Adam P. Laxalt
Brian W. Barnes
Megan M. Wold
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036

*For Defendants:*
Letitia James
Attorney General for the State of New York
Joya C. Sonnenfeldt
Assistant Attorney General
28 Liberty Street
New York, NY 10005

*For Proposed Defendant-Intervenors West Harlem Environmental Action, Inc., Black Farmers United-New York State, Inc., Citizens Campaign for the Environment, and Catskill Mountainkeeper:*
Michelle Wu
Mitchell S. Bernard
Natural Resources Defense Council, Inc.
40 West 20th Street, 11th Floor
New York, NY 10011

Dror Ladin
Earthjustice
48 Wall Street, 15th Floor

New York, NY 10005

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

Plaintiffs, representing twenty-two states and four industry groups, bring this action

raising numerous federal and state constitutional challenges to New York State's Climate Change

Superfund Act ("the Act"). (Dkt. No. 125, at 1-2). Plaintiffs seek injunctive and declaratory relief

against Defendants Letitia James, in her official capacity as Attorney General of New York,

Amanda Lefton, in her official capacity as Acting Commissioner of the New York State

Department of Environmental Conservation, and Amanda Hiller, in her official capacity as

Acting Tax Commissioner of the New York State Department of Taxation. (*Id.*). On April 11,

2025, four nonprofit organizations – West Harlem Environmental Action, Inc., Black Farmers

United-New York State, Inc., Citizens Campaign for the Environment, and Catskill

Mountainkeeper – filed a motion for permissive intervention under Federal Rule of Civil

Procedure 24(b)(1)(B) to defend the Act. (Dkt. No. 130). Plaintiffs opposed the motion. (Dkt.

No. 153). This matter was referred to United States Magistrate Judge Daniel J. Stewart who, on

September 3, 2025, issued a Report-Recommendation and Order recommending that the motion

be denied. (Dkt. No. 187). The proposed intervenors filed timely objections to the Report-

Recommendation, to which Plaintiffs have responded. (Dkt. Nos. 194, 201). For the reasons that

follow, the Report-Recommendation is adopted in its entirety.

II.      **BACKGROUND**

In 2024, New York enacted the "Climate Change Superfund Act," which establishes "a climate change adaptation cost recovery program that will require companies that have contributed significantly to the buildup of climate change-driving greenhouse gases in the atmosphere to bear a proportionate share of the cost of infrastructure investments and other expenses necessary for comprehensive adaptation to the impacts of climate change in New York state." *See* Climate Change Superfund Act, ch. 679, 2024 N.Y. Sess. Laws (S. 2129-B); *see also* N.Y. Env't Conserv. Law § 76-0103. Plaintiffs challenge the Act on the grounds that it is preempted under the Supremacy Clause and the Clean Air Act, and that it violates (1) the Commerce Clause, (2) the Due Process Clause of the Fourteenth Amendment, (3) the Due Process Clause of Article One § 6 of the New York Constitution, (4) the Equal Protection Clause of the Fourteenth Amendment, (5) the Excessive Fines Clause of the Eighth Amendment, (6) the Takings Clause of the Fifth Amendment, and (6) the Takings Clause of Article One § 7 of the New York Constitution. (*See* Dkt. No. 125, at 40-84).

Proposed intervenors are nonprofit organizations "devoted to addressing various aspects of the climate crisis, including adaptation and resilience." (Dkt. No. 130-1, at 6). Proposed intervenors assert that they "stand to benefit from implementation of the Act and seek intervention to defend their interests and aid the Court's just and equitable adjudication of Plaintiffs' efforts to strike down this important statute." (*Id.*). Proposed intervenors argue that their "defense shares common questions of law with the main action[,]" and that they "intend to address the fundamental legal questions presented by Plaintiffs by showing the Climate Change Superfund Act is constitutional and is not preempted." (*Id.* at 13-14).

This action was recently consolidated with another action, *Chamber of Com. v. James*, No. 25-cv-01307 (N.D.N.Y. consolidated Oct. 20, 2025). (*See* Dkt. No. 204). In that action,

Plaintiffs Chamber of Commerce of the United States of America, American Petroleum Institute, National Mining Association, and the Business Council of New York State, Inc., similarly argue that the Act is preempted under the Supremacy Clause and the Clean Air Act, and that it violates the Due Process Clause, the Commerce Clause, the Excessive Fines Clause, and the Takings Clause. *Chamber of Com. v. James*, No. 25-cv-01307 (N.D.N.Y. consolidated Oct. 20, 2025) (Dkt. No. 1, at 39-88). A briefing schedule has been set for cross-motions for partial summary judgment on the preemption issues. (*See* Dkt. Nos. 193, 203, 204).

## III.    STANDARD OF REVIEW

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.* at 487.

## IV.    DISCUSSION

As Magistrate Judge Stewart observed, "[t]he Second Circuit has recognized that a number of factors should be considered in evaluating intervention generally under Rule 24." (Dkt. No. 187, at 3). Specifically, the Second Circuit has held that to be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest

in the action, (3) demonstrate that the interest may be impaired by the disposition of the action,

and (4) show that the interest is not protected adequately by the parties to the action." (*Id.* at 3-4

(quoting *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014))). "In addition to the

requirements of Rule 24(a)(2), courts consider other factors in determining whether permissive

intervention is appropriate," including:

> (1) whether the applicant will benefit by intervention, (2) the nature and extent of the
> intervenors' interests, (3) whether [the intervenors'] interests are adequately represented
> by the other parties, and (4) whether parties seeking intervention will significantly
> contribute to full development of the underlying factual issues in the suit and to the just
> and equitable adjudication of the legal questions presented.

*Kearns v. Cuomo*, No. 19-cv-00902, 2019 WL 5060623, at *4, 2019 U.S. Dist. LEXIS 175384, at

*12 (W.D.N.Y. Oct. 9, 2019) (quoting *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100,

102 (D. Conn. 2007)).

Weighing those factors, Magistrate Judge Stewart reasoned that proposed intervenors'

application was "clearly timely," and expressed "little doubt that [proposed intervenors] have a

legitimate interest in the defense of this action." (Dkt. No. 187, at 4). But Magistrate Judge

Stewart concluded that other relevant factors, "in particular the extent to which the proposed

intervenors' interests are not already adequately represented in this case and the risk that

permitting intervention may have on the orderly litigation of these important issues," weighed

against granting proposed intervenors' motion. (*Id.*). Magistrate Judge Stewart noted that the

proposed intervenors "offer[ed] no basis for finding that their intervention is necessary for

resolution of [the] legal questions" concerning the Plaintiffs' constitutional claims, and that the

State Defendants would vigorously and competently pursue the proposed intervenors' objective.

(*Id.* at 5-6).

Proposed intervenors object to several aspects of Magistrate Judge Stewart's analysis in weighing these factors. (*See generally* Dkt. No. 194). The Report-Recommendation's findings and conclusions are summarized as relevant throughout the Discussion.

### A.    State Defendants' Consent

Proposed intervenors argue that "a significant conclusion" in Magistrate Judge Stewart's Report-Recommendation "was based on a factual error[.]" (Dkt. No. 194, at 4). On July 1, 2025, proposed intervenors brought Magistrate Judge Stewart's attention to a "recent order granting two nonprofit organizations permission to intervene defensively in a challenge to Vermont's Climate Superfund Act." (Dkt. No. 175, at 1 (citing *Chamber of Com. v. Moore*, No. 24-cv-01513, 2025 WL 1795803, 2025 U.S. Dist. LEXIS 125518 (D. Vt. June 30, 2025))).[1] As relevant here, the Court in *Moore* noted that "[w]hile not dispositive, a state's consent to intervention may be seen as an acknowledgement that [the proposed intervenors] might 'be able to advocate for aspects of the case that are outside of the State's purview, or beyond its area of expertise.'" *Moore*, 2025 WL 1795803, at *3, 2025 U.S. Dist. LEXIS 125518, at *15 (quoting *Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*, No. 05-CV-302, 2006 WL 8567240, at *5, 2006 U.S. Dist. LEXIS 119084, at *16-17 (D. Vt. May 3, 2006)). In his Report-Recommendation, however, Magistrate Judge Stewart distinguished *Moore*: he found that the court in that case "was clearly influenced by the consent of the state officials named as [the d]efendants to the request to intervene[,]" while the named Defendants in this action had not "noted their consent to the intervention request." (Dkt. No. 187, at 7-8 (citing *Moore*, 2025 WL 1795803, at *3, 2025 U.S. Dist. LEXIS 125518, at *15)).

---

[1] In *Moore*, the District of Vermont granted a motion for permissive intervention filed by organizations "who allege[d] their members have been harmed by climate change and could benefit from the implementation of [Vermont's] Climate Superfund Act." *Moore*, 2025 WL 1795803, at *1, 2025 U.S. Dist. LEXIS 125518, at *9.

Proposed intervenors contend that Magistrate Judge Stewart "misapprehend[ded]" that the State Defendants did not consent to proposed intervenors' motion, "when in fact the State Defendants *did* consent" to intervention. (Dkt. No. 194, at 4 (citing Dkt. Nos. 187, at 8)). Proposed intervenors cite to representations they made in their motion to intervene that Defendants consented to the intervention requested. (Dkt. Nos. 130, at 2; 130-1, at 6 n.1). On September 17, 2025, following the issuance of the Report-Recommendation, State Defendants filed a letter "to confirm" that the State "did consent" to proposed intervenors' motion. (Dkt. No. 195). Proposed intervenors argue that Magistrate Judge Stewart's "misapprehension" of the State Defendants' consent was a "material error." (Dkt. No. 194, at 5). Plaintiffs argue that the "error was a minor one" because the Report-Recommendation "discussed consent only briefly" and "rested on multiple independent grounds[.]" (Dkt. No. 201, at 5-7). Further, Plaintiffs assert that consent "is neither dispositive nor particularly influential when other factors weigh against intervention, like they do here." (*Id.* at 6).

The Court does not read Magistrate Judge Stewart's observation—that "the named Defendants ha[d] not noted their consent to the intervention request"—as erroneous. (*See* Dkt. No. 187, at 8). While proposed intervenors' motion and memorandum of law indicate the named Defendants' consent to intervention, (*see* Dkt. No. 194, at 4-5 (citing Dkt. Nos. 130, at 2; 130-1, at 6 n.1)), Defendants did not note their consent on the record until *after* Magistrate Judge Stewart issued the Report-Recommendation, (*see* Dkt. No. 195). In any event, on de novo review, and considering the State Defendants' consent, the Court does not find their consent dispositive.

"Permissive intervention is wholly within the court's discretion," *Green v. Biden*, No. 24-cv-1975, 2024 WL 4932751, at *3, 2024 U.S. Dist. LEXIS 217562, at *8 (E.D.N.Y. Dec. 2,

2024), and "each intervention case is highly fact specific and tends to resist comparison to prior

cases[,]" *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (quoting

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009)).

Plaintiffs correctly note that "other factors weighed in favor of intervention" in *Moore*:

"Vermont's superfund scheme imposes a to-be-determined penalty" that is tied to the cost of

certain harms caused by climate change, and therefore the intervening nonprofits in *Moore* "may

be better situated to advocate for their members" who bear those costs. (Dkt. No. 201, at 6-7

(citing Vt. Stat. Ann. tit. 10, §§ 598(b), 599c)). Here, in contrast, proposed intervenors have not

identified any such aspect of the New York Act that is specifically tied to their members, nor any

other aspect that is "outside of the State's purview, or beyond its area of expertise[.]]" *See Moore*,

2025 WL 1795803, at *3, 2025 U.S. Dist. LEXIS 125518, at *15.

    Proposed intervenors have not shown that they are likely to possess information

necessary to develop a factual record. They have not responded to Magistrate Judge Stewart's

concern that "given the nature of Plaintiffs' constitutional claims . . . significant discovery is

[not] likely to be necessary or beneficial in litigating the matter." (Dkt. No. 187, at 5). The Court

agrees with Magistrate Judge Stewart's observation that proposed intervenors "offer no basis for

finding that their intervention is necessary for resolution of" the particular legal questions arising

out of Plaintiffs' constitutional claims. (*See id.*). *See also Kearns*, 2019 WL 5060623, at *6, 2019

U.S. Dist. LEXIS 175384, at *19 ("When viewed against the backdrop that the resolution of the

pending motions will be driven by a legal analysis and application of the law—as opposed to the

policy considerations advanced by the [ ] proposed intervenors in their motion papers—the Court

is not persuaded that it should exercise its discretion and allow permissive intervention, at least at

this stage of the litigation.").

## B.    Delay

Proposed intervenors' next two objections pertain to Magistrate Judge Stewart's analysis

of the effect of intervention on the "orderly litigation of these important issues[.]" (Dkt. No. 187,

at 4). First, proposed intervenors argue that Magistrate Judge Stewart was wrong to reason that,

"because the subject of this litigation is of broad societal concern, granting [proposed

intervenors'] motion would likely result in further applications for intervention that would delay

the litigation and present case management concerns." (Dkt. No. 194, at 5 (citing Dkt. No. 187,

at 4-5)). Second, and relatedly, proposed intervenors disagree with Magistrate Judge Stewart's

reasoning that permitting intervention "would complicate the principal parties' efforts to

coordinate scheduling and move the case forward expeditiously." (*Id.* at 6 (citing Dkt. No. 187,

at 5-6)). Proposed intervenors assert they are "prepared to adhere to any court-ordered briefing

schedule," and that the Court "will have ample time to resolve the case before any obligations

are imposed" because "the agency's implementing regulations are not due until 2027, and cost

recovery payments [ ] are not due until the end of 2028." (*Id.* at 6-7 (citations omitted)).

Plaintiffs disagree on both counts. Plaintiffs argue that "intervention would complicate a

process that is quickly becoming more complicated" because the Southern District of New York

recently transferred a similar lawsuit to the Northern District, (*see* Dkt. No. 201, at 9), which has

since been consolidated with this case, *see Chamber of Com. v. James*, No. 25-cv-01307

(N.D.N.Y. consolidated Oct. 20, 2025). Further, Plaintiffs assert that proposed intervenors are

wrong to assume that the Court has "ample time to resolve the case before any obligations are

imposed, (*see* Dkt. No. 194, at 7), because "targeted parties must factor New York's punitive

penalties into their current business planning[,]" (Dkt. No. 201, at 9).

The Second Circuit has explained that "[t]he principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (internal quotation and citation omitted). "Additional parties always take additional time which may result in delay, but this does not mean that intervention should be denied. The rule requires the court to consider whether intervention will 'unduly delay' the adjudication." *Ass'n of Connecticut Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102 (D. Conn. 2007) (quoting 7C Wright & Miller's Federal Practice & Procedure § 1913 (2d ed. 1986)). "Concerns about undue delay and complication resulting from permissive intervention are acute where[,]" as here, "the Government [ ] is a party to the underlying action." *See S.E.C. v. Bear, Stearns & Co. Inc.*, No. 03-cv-2937, 2003 WL 22000340, at *3, 2003 U.S. Dist. LEXIS 14611, at *8-9 (S.D.N.Y. Aug. 25, 2003).

After weighing the relevant factors, the Court agrees with Magistrate Judge Stewart that permissive intervention is not appropriate in this case. Given that climate change is a subject of interest to society writ large, Magistrate Judge Stewart's concerns regarding further requests for intervention have real merit. (*See* Dkt. No. 187, at 4-5). Proposed intervenors argue that *Kearns* is distinguishable because in that case, "numerous third parties" had already "sought leave of court to become involved in various ways," (Dkt. No. 194, at 5-6). But each intervention case is fact-specific. And, in any event, the court's analysis in *Kearns* did not explicitly, nor solely, rely on the fact that other third parties had previously sought to intervene. *See* 2019 WL 5060623, at *6, 2019 U.S. Dist. LEXIS 175384, at *18-19 (denying permissive intervention where, "[g]iven the significant interest of various third parties in this litigation, granting permissive intervention to the [ ] proposed intervenors would likely result in *further* requests for permissive intervention

15

which may ultimately delay the litigation and present obstacles to its manageability" (emphasis added)). The Court also agrees with Plaintiffs that this case has already been complicated by its consolidation with *Chamber of Com. v. James*, No. 25-cv-01307 (N.D.N.Y. consolidated Oct. 20, 2025).[2] Finally, as Magistrate Judge Stewart noted, "it is likely 'that the ultimate objective of the [ ] proposed intervenors [will be] vigorously and competently pursued by Defendants as represented by the New York State Attorney General and Solicitor General.'" (Dkt. No. 187, at 6 (citing *Kearns*, 2019 WL 5060623, at *6, 2019 U.S. Dist. LEXIS 175384, at *19)).

Having reviewed the proposed intervenors' objections de novo, the Court declines in its discretion to grant permissive intervention. Because proposed intervenors' interests will be vigorously defended by the State Defendants—as proposed intervenors themselves acknowledge, (*see* Dkt. No. 194, at 5)—and because, as noted above, proposed intervenors have not identified a specific aspect of this case that is outside the State's purview or expertise, the Court agrees that the risk of delay and further complication weighs in favor of denying proposed intervenors' motion in this case.

## C.     Amici Status

Magistrate Judge Stewart reasoned that proposed intervenors could present their legal arguments "just as effectively in an amicus curiae capacity." (Dkt. No. 187, at 7). Proposed intervenors argue that "amici status is a poor fit" because their "unique and substantial interests in the case [ ] are not limited to a single phase of this litigation or a single issue." (Dkt. No. 194,

---

[2] The Court is aware of another case, *United States v. New York*, 25-cv-03656 (S.D.N.Y. filed May 1, 2025), which is still pending in the Southern District and shares claims in common with this action, *see United States v. New York*, No. 25-cv-3656, 2025 WL 2208941, at *1, 2025 U.S. Dist. LEXIS 149744, at *3 (S.D.N.Y. Aug. 4, 2025). The court in that case denied the State defendants' motion to transfer the action to the Northern District. *Id.*, 2025 WL 2208941, at *5, 2025 U.S. Dist. LEXIS 149744, at *12. That court also recently denied a motion to intervene from several proposed intervenors in this case, including West Harlem Environmental Action, Inc., Citizens Campaign for the Environment, and Catskill Mountainkeeper. *See United States v. New York*, No. 25-cv-3656, 2025 WL 3022856, at *1, 2025 U.S. Dist. LEXIS 216154, at *2-3 (S.D.N.Y. Oct. 29, 2025).

at 7). Plaintiffs disagree, asserting that proposed intervenors "do not explain why their 'unique and substantial interests' make amici status a poor fit." (Dkt. No. 201, at 10).

The Court agrees that proposed intervenors have not sufficiently explained why amici status would not permit them to adequately present their arguments to the Court. "The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." *Kearns*, 2019 WL 5060623, at *5, 2019 U.S. Dist. LEXIS 175384, at *13 (quoting *United States v. El–Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994)). This is precisely what proposed intervenors offer the Court in their original motion. (*See* Dkt. No. 130-1, at 18-19 (arguing that proposed intervenors will contribute to the equitable adjudication of the case "[g]iven their unique perspectives and deep experience with the issues the Act is designed to address[,]" and that they "will provide the Court with a 'fuller picture' of the public interest at stake" (citations omitted))). Granting proposed intervenors amici status could "ensure that the Court benefits from any additional information [proposed intervenors] may have, while avoiding the duplicative and unnecessary litigation that would arise" if the Court permitted proposed intervenors to proceed as separate defendants. *See Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, No. 19-cv-11285, 2020 WL 5667181, at *8, 2020 U.S. Dist. LEXIS 174574, at *31 (S.D.N.Y. Sept. 23, 2020) (quoting *Gulino v. Bd. of Educ.*, No. 96-cv-08414, 2009 WL 2972997, at *4, 2009 U.S. Dist. LEXIS 84677, at *13-14 (S.D.N.Y. Sept. 17, 2009)).[3]

Proposed intervenors have not identified any other objection to Magistrate Judge Stewart's recommendation that their motion to intervene be denied. The Court has therefore reviewed the remaining portion of the Report-Recommendation for clear error, and found none.

---

[3] The Court notes that, if proposed intervenors seek to file an amicus curiae brief, they must seek leave of Court in compliance with this Court's local rules. *See generally* L.R. 7.2.

Accordingly, the Court adopts the Report-Recommendation in its entirety for the reasons stated therein.

**V.    CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 187) is **ADOPTED** in its entirety for the reasons stated therein; and it is further

**ORDERED** that Proposed Defendant-Intervenors' motion to intervene (Dkt. No. 130) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  November 6, 2025
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge