## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF WEST VIRGINIA, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> LETITIA JAMES,  , in her official capacity as the Attorney General of New York, et al., <br><br> *Defendants.* | No. 1:25-cv-00168-BKS-DJS |

## MEMORANDUM IN SUPPORT OF NEW YORK'S MOTION TO STRIKE THE DECLARATION OF BENJAMIN ZYCHER AND PART OF THE DECLARATION OF CHRISTOPHER LANDAU

LETITIA JAMES
Attorney General of the State of New York
The Capitol
Albany, New York 12224-0341
Attorney for State Defendants

MONICA WAGNER
Deputy Bureau Chief

AYAH F. BADRAN
SABITA KRISHNAN
LAURA MIRMAN-HESLIN
JOYA SONNENFELDT
Assistant Attorneys General

*Of Counsel*
December 19, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 4

FACTUAL BACKGROUND ..................................................................................... 5

   The Zycher Declaration ..................................................................................... 5

   The Landau Declaration ..................................................................................... 8

ARGUMENT .............................................................................................................. 10

  I. ZYCHER'S DECLARATION DOES NOT MEET THE REQUIREMENTS
     OF *DAUBERT* AND FRE 702 ............................................................................. 10

    A. Zycher's Opinion That The Climate Act Will Increase Prices Is
       Unreliable Because It Is Premised On His Speculation About How
       Investors Will View the Climate Act. ............................................................. 12

    B. Zycher Is Unqualified to Apply Climate Change Models or to Offer an
       Opinion Regarding the Impact of Greenhouse Gas Emissions on
       Temperature Change. ....................................................................................... 14

  II. PORTIONS OF LANDAU'S DECLARATION ARE INADMISSIBLE ............... 16

CONCLUSION ........................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)...................................................................... 8-10

*Bright v. Ashcroft*,
  259 F. Supp. 2d 494 (E.D. La. 2003) ...................................................... 14

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) ...........................................................................passim

*Hollander v. Am. Cyanamid Co.*,
  172 F.3d 192 (2d Cir. 1999)...................................................................... 13

*JBrick, LLC v. Chazak Kinder, Inc.*,
  21-CV-02883, 2023 WL 6372970 (E.D.N.Y Sept. 28, 2023) ................... 12

*Kewazinga Corp. v. Google LLC*,
  20 Civ. 1106, 2024 WL 4894840 (S.D.N.Y. Oct. 17, 2024) ..................... 11

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008)...................................................................... 9-10

*McLaughlin v. Copeland*,
  435 F. Supp. 513 (D. Md. 1977) .............................................................. 14

*Morse/Diesel, Inc. v. Trinity Indus.*,
  67 F.3d 435 (2d Cir. 1995)...................................................................... 8, 12

*Nimely v. City of N.Y.*,
  414 F.3d 381 (2d Cir. 2005)...................................................................... 8-10

*Nodoushani v. S. Conn. State Univ.*,
  507 Fed. App. 79 (2d Cir. 2013) .............................................................. 13

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)...................................................................... 7-8

*SEC v. Lek Secs. Corp.*,
  370 F. Supp. 3d 384 (S.D.N.Y. 2019) ...................................................... 12

ii

*U.S. v. Alessi,*
    599 F.2d 513 (2d Cir. 1979) ............................................................................... 13

*United States v. Cruz,*
    353 F.3d 187 (2d. Cir. 2004) ................................................................................ 8

*United States v. Johns-Manville Corp.,*
    245 F. Supp. 74 (E.D. Pa. 1965) ....................................................................... 16

*United States v. Tin Yat Chin,*
    371 F.3d 31 (2d Cir. 2004) ................................................................................... 8

*United States v. Williams,*
    506 F.3d 151 (2d Cir. 2007) ............................................................................. 7-8

## Federal Statutes

28 U.S.C. § 517 ................................................................................................................... 1

## State Statutes

Climate Change Superfund Act of 2024, 2024 N.Y. Sess. Laws ch. 679
    (codified as N.Y. State Fin. Law § 97-m; N.Y. Env't Conserv. Law §§ 76-
    0101, 76-0103, 76-0105) .......................................................................... passim
    § 76-0101 (6) ...................................................................................................... 11
    § 76-0101 (21) .................................................................................................... 11
    § 76-0103 (3) (b) ................................................................................................ 11

## Rules

Fed. R. Civ. P. 56 ....................................................................................................... passim

Fed. R. Evid.
    602 ................................................................................................. 1, 7, 13-14
    701 ................................................................................................................. 13
    702 .......................................................................................................... passim

## PRELIMINARY STATEMENT

In these consolidated actions, the *Chamber of Commerce* plaintiffs (collectively, "the Chamber") and the *West Virginia* plaintiffs (collectively, "West Virginia") challenge New York's Climate Change Superfund Act ("Climate Act"), 2024 N.Y. Sess. Laws ch. 679 (codified as N.Y. State Fin. Law § 97-m; N.Y. Env't Conserv. Law §§ 76-0101, 76-0103, 76-0105). The Climate Act requires fossil fuel companies to compensate the State of New York for some of the costs it will incur to protect New Yorkers from the significant impacts of climate change. The Chamber and West Virginia have moved for partial summary judgment, ECF 216 and 217, and the United States submitted a statement of interest, ECF 222,[1] in support of those motions. Defendants (collectively, "New York") move to strike the Declaration of Dr. Benjamin Zycher ("Zycher Decl."), ECF 217-26, submitted by West Virginia, and several paragraphs of the Declaration of Christopher Landau ("Landau Decl."), ECF 221-1, submitted by the United States.

On summary judgment, the court considers only admissible evidence. The court should strike the Zycher Declaration because it does not meet the standards governing the admissibility of expert testimony set forth in Federal Rules of Evidence ("FRE") 702, and clarified in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588–592 (1993). And the Court should strike paragraphs 15 through 20 of the Landau Declaration because they do not meet the requirements of FRE 602 and Federal Rule

---

[1] The State does not contest the United States' authority to file a statement of interest pursuant to 28 U.S.C. § 517.

of Civil Procedure ("FRCP") 56(c)(4) applicable to lay testimony, which require affiants to have personal knowledge and provide testimony that is not speculative or conclusory.

## FACTUAL BACKGROUND

### The Zycher Declaration

Zycher is a senior fellow at the American Enterprise Institute. Zycher Decl. ¶ 1. He has a Ph.D. in economics and a master's degree in public policy. *Id.* ¶ 2. He has held unspecified "teaching roles" at the University of California, Los Angeles. *Id.* ¶ 1. He has also held "research positions at private research institutions" and served as a senior staff economist at the Council of Economic Advisers from 1981-83 and in the State Department from 2010-12. *Id.* He does not provide a curriculum vitae or any information about publications in peer-reviewed journals.

Zycher offers two opinions. First, he opines that the Climate Act will reduce investment in and production of fossil fuels, which will increase the price of fossil fuels by six to twelve percent. *Id.* ¶¶ 5, 11–12. He further opines that West Virginia and other states that impose production-based severance taxes will see a decline in revenue and suffer economic harm from the increase in fossil fuel prices. *Id.* ¶¶ 44, 50–55. Second, he opines that "the temperature impact of [greenhouse gas] emissions from U.S. natural gas and petroleum systems is not detectable," *id.* ¶ 60, and therefore he concludes that the Climate Act's finding that fossil fuel companies that will receive cost demands are responsible for damages caused by anthropogenic climate change in New York is not "analytically" supported. *Id.* ¶¶ 16–17, 62, 67.

*Economic Impact Opinion:* Zycher first asserts that the Climate Act will create constituencies that are interested in the continuation of the programs it funds. *Id.* ¶ 24. He then suggests that as a result investors will believe that the Climate Act will be renewed to seek additional cost demands in the future and will therefore view the Climate Act as a tax on future conduct rather than a one-time fixed cost based on past conduct. *Id.* ¶¶ 9–12, 27–29, 35.  Zycher does not provide any theory or method, nor does he rely on any peer reviewed literature, to support his conclusion that investors will view the Climate Act as tax on future conduct. *See id.* ¶¶ 27–29, 35. Nor does he cite any data, studies, publications, or models to support this conclusion. *See id.* Nevertheless, based entirely on his speculation that investors will view the Climate Act as tax on future conduct, Zycher goes on to opine that this hypothetical tax will reduce fossil fuel production and lead to a six to twelve percent increase in prices. *Id.* ¶¶ 33–43.

Zycher's calculation of this purported six to twelve percent increase in fossil fuel prices is flawed for several reasons. Zycher applies his hypothetical tax to fossil fuel investment rather than to fossil fuel extraction and refining even though the Climate Act's cost demands are tied to the emissions that result from extraction and refining, not investment in fossil fuels. *See id.* ¶ 35; Declaration of Dr. Don Fullerton dated December 5, 2025 ("Fullerton Decl.")[2] ¶¶ 42–43, 45. Zycher also treats his hypothetical tax as a tax on all existing fossil fuel companies instead of only the fossil

_____

[2] New York submits the Fullerton Declaration in support of this motion and its cross-motion and opposition to West Virginia's motion for partial summary judgment.

fuel companies that will receive assessments under the Act. *See* Zycher Decl. ¶¶ 37–40; Fullerton Decl. ¶ 47. Zycher does not provide any support for these flawed methodological choices.

*Climate Change Opinion:* For his second opinion, Zycher purports to estimate the impact of greenhouse gas emissions from "US natural gas and petroleum systems" utilizing what he describes as "the EPA Climate model," concluding that if all such emissions were reduced to zero by 2050, the temperature impact would not be detectable. Zycher Decl. ¶ 60. Zycher is not qualified to opine on temperature effects using any climate model, and additionally his analysis is flawed for several reasons. First, he restricts the greenhouse gas emissions he considers to emissions from "US natural gas and petroleum" systems, a much narrower subset of the fossil fuels than covered by the Climate Act, which includes emissions from the extraction and refinement of coal and crude oil worldwide, not just US natural gas and petroleum systems. *See* Zycher Decl. ¶ 59; Declaration of Dr. Justin S. Mankin dated December 18, 2025 ("Mankin Decl.")[3] ¶¶ 42–45. Zycher further limits the emissions he considers to emissions that result only from facility operations, rather than to total emissions attributable to the fossil fuels, without providing any basis for that limitation. *See* Zycher Decl. ¶ 59; Mankin Decl. ¶¶ 42–45.

Zycher also appears to misunderstand the data he utilizes. He presents the European Union EDGAR data he uses in his calculations as billions of metric tons,

---

[3] New York submits the Mankin Declaration in support of this motion and its cross-motion and opposition to West Virginia's motion for partial summary judgment.

instead of millions of tons of CO2 equivalent, resulting in the inflation of global greenhouse gas emissions by 1,000 times. *See* Zycher Decl. ¶ 59; Mankin Decl. ¶ 44 fn. 46.

Zycher's methodological approach is also flawed because his analysis does not seek to determine the impact of historical emissions, which is what the Climate Act attempts to redress. Rather he focuses on how much future warming would be avoided if the narrow set of emissions he considers were reduced to zero by 2050. *See* Zycher Decl. ¶ 60; Mankin Decl. ¶¶ 46–48. Finally, Zycher cites to non-peer reviewed documents to support his analytical approach and conclusions, including his own non-peer reviewed work and a Department of Energy report which has been widely dismissed by the scientific community. *See* Zycher Decl. ¶ 62, n. 30; Mankin Decl. ¶ 49–51.

### The Landau Declaration

In support of its statement of interest, the United States filed a declaration from Christopher Landau, which the United States does not characterizes or submit as an "expert declaration." *See generally* United States Statement of Int., ECF 222 (US letter requesting leave to oppose New York's motion to strike). Landau is the Deputy Secretary of State for the United States and has served in this role since March 2025. Landau Decl. ¶ 1. In this role, he is "chief foreign affairs advisor" and "assist[s] ... in the formulation and conduct of U.S. foreign policy." *Id.* He previously served as the Ambassador to Mexico. *Id.* Landau states that he is "familiar with" the Climate Act. *Id.* ¶ 2.

Landau's declaration begins with a summary of various federal laws, executive orders, and international climate negotiations and agreements. *Id.* ¶¶ 3–14. Landau then opines on the impact of the Climate Act on economic and foreign affairs. *Id.* ¶¶ 15–20. For example, Landau states that the Climate Act will "increase costs for energy producers" as well as "U.S. consumers.*" Id.* ¶ 15. Landau also states that the Climate Act "foments new frictions in international climate negotiations" but does not identify what those frictions are or how he knows about them. *Id.* ¶ 16. Landau also states that the Climate Act interferes with the "United States' participation in the Framework Convention and announcement of its intention to withdraw from the Paris Agreement.*" Id.* ¶ 17. Landau also states that the Climate Act "threatens to harm foreign relations between the United States and foreign countries where [fossil fuel] producers are based or have substantial operations" and suggests that foreign countries may "retaliate[] through increased costs on U.S. fossil fuel producers." *Id.* ¶ 18. Landau also asserts that the Climate Act "harms the federal government's capacity to speak with one voice when conducting commercial and political relations with foreign governments." *See id.* ¶ 19. Finally, Landau opines that "[t]hese foreign policy harms would multiply" if other States enact similar laws. *Id.* ¶ 20.

The United States filed a substantially similar declaration from Landau in support of its motion for summary judgment in a lawsuit challenging a similar Vermont law. U.S. Mot. Summ. J., Attach. 3, Landau Decl. ¶¶ 15–20, United States v. Vermont, No. 2:25-cv-00463 (D. Vt. Sept. 15, 2025), Declaration of Deputy Secretary of State Christopher Landau, ECF 50-3 ("Landau Decl., *U.S. v. Vt.*"). In

support of its foreign affairs preemption argument in this case, the Chamber relies on paragraphs 15 to 20 of the declaration from the Vermont case, which are identical to the corresponding paragraphs of the Landau Declaration the United States filed with its Statement of Interest here. *See* Landau Decl., *U.S. v. Vt.* ¶¶ 15–20; Chamber Pls.' Br. Supp. Mot. Summ. J. 18, ECF 216-1; Landau Decl. ¶¶ 15–20.

## ARGUMENT

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997). The Zycher Declaration is not admissible evidence because it does meet the standards governing the admissibility of expert testimony set forth in FRE 702 and clarified in *Daubert*, 509 U.S. at 588–592. Paragraphs 15 through 20 of the Landau Declaration are not admissible evidence because they do not meet the requirements of FRE 602 and FRCP 56(c)(4) that testimony, including summary judgment declarations, must be "made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." FRCP 56(c)(4).

## I.   ZYCHER'S DECLARATION DOES NOT MEET THE REQUIREMENTS OF *DAUBERT* AND FRE 702

The proponent of expert testimony carries the burden of establishing by a preponderance of the evidence that the admissibility requirements of FRE 702 are met. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). FRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise

> if the proponent demonstrates to the court that it is more likely than not that:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The court is the "ultimate gatekeeper," with the task of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Williams*, 506 F.3d at 160 (citing *United States v. Cruz*, 353 F.3d 187, 192 (2d. Cir. 2004); *Daubert*, 509 U.S. at 597) (quotation marks omitted); *see also Raskin*, 125 F.3d at 66.

The "threshold question" is "whether a witness is 'qualified as an expert by knowledge, skill, experience, training, or education' to render his or her opinions." *Nimely v. City of N.Y.*, 414 F.3d 381, 396 n.11 (2d Cir. 2005) (quoting FRE 702). "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004); *see also Morse/Diesel, Inc. v. Trinity Indus.*, 67 F.3d 435, 444 (2d Cir. 1995).

If an expert is qualified, the court must "consider the indicia of reliability" set forth in FRE 702 to "determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir. 2002) (quotation marks and citations omitted).

11

*Daubert* also identifies "a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Id*. at 266 (quoting *Daubert*, 509 U.S. at 593–94) (punctuation omitted). "It is critical that an expert's analysis be reliable at every step." *Id.* at 267.

An expert's conclusory statements do not meet the requirements of FRE 702 or *Daubert. See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("*MLB Props.*"); *see also Nimely*, 414 F.3d at 396 (court need not admit opinion that is "connected to existing data only by the *ipse dixit* of the expert"). "When an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id.* at 396–97. (quotation and citation omitted).

## A.   Zycher's Opinion That The Climate Act Will Increase Prices Is Unreliable Because It Is Premised On His Speculation About How Investors Will View the Climate Act.

Zycher's opinion that the Climate Act will lead to an increase in fossil fuel prices is premised on his view that investors will believe that the Climate Act will be renewed to seek additional cost demands in the future and will therefore view the Climate Act as a tax on future conduct rather than a one-time fixed cost based on

past conduct. Zycher Decl. ¶¶ 5–12, 27–29, 35. This premise is key to Zycher's opinion because, as New York's economist Fullerton explains, and as Zycher implicitly acknowledges, a fixed cost based on past conduct will not impact market prices. Fullerton Decl. ¶ 14; Zycher Decl. ¶¶ 7, 19, 27–28. Zycher fails to provide any theory, method, model, study, or publication to support that central premise of his opinion, *see id.* ¶¶ 27–29, 35, which is therefore mere speculation. Zycher cites a theory that suggests interest groups drive the creation and growth of spending programs. *See id.* ¶¶ 23–26. Whatever the merits of that theory, it does not suggest that investors will subscribe to that theory or believe that the New York Legislature will be able to pass a renewal of the Climate Act.

Accordingly, Zycher's conclusory statement that investors will believe that the Climate Act will be renewed and therefore view the Climate Act as a tax on future conduct does not meet the requirements of FRE 702. *See MLB Props.*, 542 F.3d at 311; *see also Nimely*, 414 F.3d at 396. It is not based on sufficient data or facts or on reliable principles or methods. Moreover, because Zycher fails to identify any theory or method, none of the *Daubert* factors can be applied to evaluate the reliability of his statement about investors' beliefs. Because an expert's opinion must "be reliable at every step," *see Amorgianos*, 303 F.3d at 267, and the key premise of Zycher's opinion is conclusory and therefore unreliable, Zycher's opinion that the Climate Act will lead to lower production and an increase in fossil fuel prices is not sufficiently reliable to be considered on summary judgment.

In addition, Zycher's calculation that the Climate Act will lead to an increase in fossil fuel prices is not a reliable application of the facts of the case, as required by FRE 702. The Climate Act seeks to assess cost demands based on the greenhouse gas emissions that result from the fossil fuels extracted and refined by companies that meet certain statutory thresholds. N.Y. Env't Conserv. Law §§ 76-0101(6), (21), 76-0103(3)(b). Yet Zycher applies the hypothetical tax that he speculates investors will expect to the amount of fossil fuel investment by *all* United States fossil fuel companies. He provides no explanation or support for this method. *See* Zycher Decl. ¶¶ 33–35. As a result, Zycher's calculation fails to meet the requirements of FRE 702. *See, e.g.*, *Kewazinga Corp. v. Google LLC*, 20 Civ. 1106, 2024 WL 4894840 at *5 (S.D.N.Y. Oct. 17, 2024) (expert failed to reliably apply her methodology to the facts where she applied her method to the wrong revenue base).

Accordingly, the Court should strike paragraphs 5–15 and 19–55 of Zycher's declaration.

### B. Zycher Is Unqualified to Apply Climate Change Models or to Offer an Opinion Regarding the Impact of Greenhouse Gas Emissions on Temperature Change.

Zycher does not provide any evidence that he possesses "the knowledge, skill, experience, training, or education" to apply climate change models or to offer an opinion regarding the impact of greenhouse gas emission on temperature change. Zycher's education is in economics and public policy, not in climate change, climate science, climate modeling or any other relevant science. Nor does he present any other relevant training or experience that would give him expertise to opine in those areas.

As a result, Zycher is plainly unqualified to offer any opinion regarding climate change or the impact of greenhouse gas emissions on temperature change. *See e.g.*, *Morse/Diesel*, 67 F.3d at 444 (2d Cir. 1997) (affirming preclusion of an accountant from rendering opinions outside his field of expertise); *JBrick, LLC v. Chazak Kinder, Inc.*, 21-CV-02883, 2023 WL 6372970, at *6–7 (E.D.N.Y Sept. 28, 2023) (expert who was qualified to offer opinion on economic damages was not qualified to offer an opinion on the size of the market for a product or plaintiff's manufacturing capabilities); *SEC v. Lek Secs. Corp.*, 370 F. Supp. 3d 384, 407 (S.D.N.Y. 2019) (expert was unqualified to provide an opinion when "nothing in his educational background" or "his work experience" gives him the "necessary expertise").

In addition, Zycher's analysis suffers from several key errors, likely the result of his lack of qualifications, that also makes his opinion insufficiently reliable to be admissible. Zycher misunderstands the data that he utilizes, leading him to inflate global greenhouse gas emissions by 1,000 times. *See* above p. 5. He also inexplicably considers a much narrower set of emissions than the Climate Act covers and focuses on future warming rather than the harm caused by historical emissions, which is what the Climate Act seeks to redress. *Id.* And he relies on non-peer reviewed documents to support his analytical approach and conclusions, including his own non-peer reviewed work and a Department of Energy report which has been widely dismissed by the scientific community. *Id.*

Because Zycher is unqualified to offer an opinion using climate models and on climate change science, his opinion about the temperature impact of greenhouse gas

emissions is inadmissible. As a result, the Court should strike paragraphs 16–17, 56–62, and 67 of Zycher's declaration.

## II.   PORTIONS OF LANDAU'S DECLARATION ARE INADMISSIBLE

Because Landau is a lay witness whose opinion testimony in paragraphs 15 to 20 is not based on personal knowledge or perceptions, those paragraphs should be stricken as inadmissible. Landau is not presented as an expert, pp. 5 above, so he can only provide fact testimony and opinions based on his own perceptions. FRE 602, 701. FRE 602 provides in relevant part that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FRCP 56(c)(4), in turn, requires that a declaration in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Therefore, "[a] court may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds, see Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *see also Nodoushani v. S. Conn. State Univ.*, 507 Fed. App. 79, 80 (2d Cir. 2013) (summary order); *U.S. v. Alessi*, 599 F.2d 513, 514–515 (2d Cir. 1979) (district courts may strike inadmissible parts of affidavits). Landau's testimony about the purported impacts of the Climate Act, Landau Decl. ¶¶ 15–20, should be stricken because it is generalized, conclusory, and not based on his personal knowledge.

Landau's title and a generalized description of his role with respect to "foreign affairs" and "foreign policy," Landau Decl. ¶ 1, do not alone meet the standards of FRE 602 and FRCP 56(c)(4). Courts have stricken declarations—including from federal government officials—that lack personal knowledge of the specific facts in issue. S*ee, e.g.*, *Bright v. Ashcroft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003).

As to the summary of laws, international agreements, and current administration policies contained in paragraphs 3 to 14, New York does not move to strike these paragraphs, but notes that the documents referenced therein speak for themselves and that Landau does not purport to have personal knowledge regarding their development or implementation. For example, while paragraphs 11 to 14 contain characterizations of "Current U.S. Foreign Policy" and Landau is a member of the Executive branch, Landau does not suggest that he was involved in developing any of the executive orders discussed or the policies stated therein.

The Court should, however, strike paragraph 15 because Landau opines on the purported economic impacts of the Climate Act without providing any basis for those economic predictions or indication that he is competent to provide economic predictions. *See, e.g.*, *McLaughlin v. Copeland*, 435 F. Supp. 513, 520 (D. Md. 1977) (striking portion of declaration in which attorney attested to awareness of financial documents without explaining how he became aware of them or why he was competent to testify about them).

The Court should also strike paragraphs 16 to 20 because Landau does not affirmatively demonstrate that he "is competent to testify to" the opinions provided

therein. *See* FRCP 56(c)(4). By merely stating his title and giving a generalized description of his role without reference to personal experience with the subject matter of this litigation—climate change—Landau fails to establish that he is competent to opine on the likely economic and foreign-policy impacts of the Climate Act, particularly given his relatively short tenure in his current role. For example, Landau states that the Climate Act "foments new frictions in international climate negotiations" but does not identify what those frictions are or how he knows about them. Landau Decl. ¶ 16. Similarly, Landau states that the Climate Act interferes with the "United States' participation in the Framework Convention and announcement of its intention to withdraw from the Paris Agreement" but does not explain how the Climate Act has done so or the basis for his knowledge. *Id.* ¶ 17. Landau states without any examples or support that the Climate Act "threatens to harm foreign relations between the United States and foreign countries where [fossil fuel] producers are based or have substantial operations" and speculates that foreign countries may "retaliate[] through increased costs on U.S. fossil fuel producers." *Id.* ¶ 18.

Landau also asserts that the Climate Act "harms the federal government's capacity to speak with one voice when conducting commercial and political relations with foreign governments on issues such as climate change, regulation of greenhouse gas emissions, energy production, and national security," without demonstrating he has been or will be involved in such relations. *See id.* ¶ 19. These conclusory and speculative statements unsupported by examples or a basis for Landau's personal

knowledge should be stricken. Finally, the Court should strike paragraph 20, where Landau speculates that "[t]hese foreign policy harms would multiply" if other States enact similar laws, as speculative. *See, e.g.*, *United States v. Johns-Manville Corp.*, 245 F. Supp. 74, 83 (E.D. Pa. 1965) (striking speculative counterfactual statement unsupported by personal knowledge). Accordingly, New York respectfully requests that the Court strike paragraphs 15 to 20 of the Landau Declaration.

## <u>CONCLUSION</u>

For the reasons stated above, New York respectfully requests that the Court strike the Zycher Declaration and paragraphs 15 to 20 of the Landau Declaration.


Dated:      December 19, 2025
            Albany, New York


                        LETITIA JAMES
                        Attorney General of the State of New York
                        *Attorney for Defendants*

                    By: ***/s/ Ayah F. Badran***_____
                        Ayah F. Badran (Bar No. 706184)
                        Assistant Attorney General
                        Office of the New York State Attorney General
                        Environmental Protection Bureau
                        The Capitol
                        Albany, NY 12224
                        (518) 776-2394
                        ayah.badran@ag.ny.gov

                        Monica Wagner (Bar No. 706690)
                        Deputy Bureau Chief

                        Sabita Krishnan (Bar No. 706712)
                        Laura Mirman-Heslin (Bar No. 704855)
                        Joya Sonnenfeldt (Bar No. 706511)
                        Assistant Attorneys General

Office of the New York State Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-8184