UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF WEST VIRGINIA, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LETITIA JAMES, in her official capacity as the Attorney General of New York, et al.,<br><br>    *Defendants*. | No. 1:25-cv-00168-BKS-DJS |

**NEW YORK'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendants, Letitia James, in her official capacity as the Attorney General of New York, Amanda Lefton, in her official capacity as the Commissioner of the New York State Department of Environmental Conservation, and Amanda Hiller, in her official capacity as the Acting Tax Commissioner of the New York State Department of Taxation and Finance (collectively, "New York"), submit this statement of undisputed material facts, pursuant to Local Civil Rule 56.1, in support of their cross-motion for summary judgment.

1. Because New York's Climate Change Superfund Act's ("Climate Act") cost recovery demands will be based on greenhouses gases attributable to fossil fuels extracted or refined in the past, the demands will not affect the market price for energy. Declaration of Don Fullerton ("Fullerton Decl.") ¶¶ 12–26.

2. Standard economic models show that a company will continue to produce and sell additional goods and services if it can earn a profit, that is, if the

1

product is sold at a price higher than the cost of producing it, which is called the marginal cost of production. *Id.* ¶ 13.

3. The Climate Act's cost demands impose a fixed cost, not a marginal cost, because the amount of the demand is unrelated to a company's current decisions about the quantity of fossil fuels to extract or refine. *Id.* ¶¶ 14, 30.

4. Because the demands do not affect the marginal cost of production, the Climate Act will not affect the market price. *Id.* ¶¶ 17, 29–31.

5. The demands should be absorbed by fossil fuel companies and will not be passed on to consumers through increased prices. *Id.* ¶ 30.

6. Indeed, the Climate Act is not an economic regulation, as understood by economists, because it does not change the conduct of fossil fuel companies that will receive cost demands, or any other fossil fuel company inside or outside the United States. *Id.* ¶¶ 27–31.

7. Moreover, because there will be no effect on market prices, demand for energy will not change as a result of the Climate Act, and with no change in supply or demand, the Climate Act will not change energy availability in the United States. *Id.* ¶¶ 22, 36.

8. In addition, because the Climate Act does not change the current or future marginal cost of production or prices, it will not change fossil fuel companies' expectations about future profits from extracting or refining fossil fuels, or the resulting incentive to invest in new infrastructure and innovation. *Id.* ¶¶ 32–35.

9. And the Climate Act will not affect any state's revenue from severance taxes. *Id.* 37.

10. Climate science allows for the attribution of climate damage, including warming and other local climate hazards, to sets of emissions, including emissions of a specific company. Declaration of Justin Mankin (Mankin Decl.) ¶¶ 10, 21–39.

11. In-state climate harms can be attributed to a specific company's greenhouse gas emissions by calculating the warming from cumulative greenhouse gas concentrations with and without the company's emissions and then using modeling to link the company's impact on warming to altered in-state hazards such as the likelihood or magnitude of extreme heat. *Id.* ¶¶ 33–38.

12. The process for this type of attribution begins with identifying the greenhouse gas emissions to be considered. *Id.* ¶¶ 35–37.

13. The emissions attributable to fossil fuel companies are Scope 1 emissions, direct emissions from a company's operations, including emissions from flaring, refining and other operations; Scope 2 emissions, emissions from energy supplied to the company for its operations, including for heating and cooling; and Scope 3 emissions, which largely consist of emissions from the use of the company's products. *Id.* ¶¶ 14–20.

14. For decades, international environmental law and agreements to which the United States is a party have recognized the "polluter pays" principle, pursuant to which a polluting entity must pay the costs that its profit-making activities impose

3

on neighboring people and entities, as opposed to benefiting financially from costs it causes others to bear. Declaration of Harold Koh (Koh Decl.) ¶¶ 13–17.

15. In 1992, many countries, including the United States, signed the United Nations Framework Convention on Climate Change ("Framework Convention"), agreeing to "stabilization of greenhouse gas concentrations in the atmosphere at a level that would prevent dangerous anthropogenic interference with the climate system." *Id.* ¶¶ 18–20.

16. The Framework Convention is implemented through annual conferences and treaties such as the Kyoto Protocol and Paris Agreement. *Id.* ¶ 18.

17. The United States declined to participate in the most recent annual conference in 2025 in Brazil. *Id.* ¶¶ 18, 28, 34.

18. The United States declined to join the 1997 Kyoto Protocol, which established legally binding obligations to reduce emissions in developed countries, but did not withdraw from the Framework Convention. *Id.* ¶¶ 21–22.

19. The United States joined the 2015 Paris Agreement, which requires members to pursue domestic mitigation measures to meet national emission reduction goals and transparently communicate information on their progress. *Id.* ¶¶ 23–28.

20. Unlike the Kyoto Protocol, the Paris Agreement does not have legally binding emissions reduction requirements. *Id.* ¶ 25.

21. Neither the Framework Convention nor the Paris Agreement addresses intergovernmental liability for past greenhouse gas emissions. *Id.* ¶¶ 25, 31–34. For

example, the "loss and damage provision" in Article 8 does not provide a basis for any liability or compensation by any government. *Id.* ¶ 31.

22. Nor do they address payments from private companies to subnational government entities like New York, as the agreements apply only to countries and regional economic integration organizations like the European Union. *Id.* ¶ 33.

23. In January 2025, President Trump announced his intention to withdraw from the Paris Agreement, but withdrawal requires at least one year's written notice, so the earliest the withdrawal could become effective is January 2026. *Id.* ¶¶ 29–30.

Dated:   December 19, 2025
         Albany, New York

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*

By:   */s/Ayah F. Badran*
      Ayah F. Badran (Bar No. 706184)
      Assistant Attorney General
      Office of the New York State Attorney General
      Environmental Protection Bureau
      The Capitol
      Albany, NY 12224
      (518) 776-2394
      ayah.badran@ag.ny.gov

      Monica Wagner (Bar No. 706690)
      Deputy Bureau Chief

      Sabita Krishnan (Bar No. 706712)
      Laura Mirman-Heslin (Bar No. 704855)
      Joya Sonnenfeldt (Bar No. 706511)
      Assistant Attorneys General
      Office of the New York State Attorney General
      Environmental Protection Bureau
      28 Liberty Street

5

New York, NY 10005
(212) 416-8184

6