UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF WEST VIRGINIA, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> LETITIA JAMES, in her official capacity as the Attorney General of New York, et al., <br><br> *Defendants.* | No. 1:25-cv-00168-BKS-DJS |

**NEW YORK'S RESPONSE TO WEST VIRGINIA PLAINTIFFS' RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b), defendants (collectively, "New York") submit their response to Plaintiffs' Statement of Material Facts filed by West Virginia, *et al.* ("West Virginia"), ECF 218.

West Virginia moves for summary judgment on Counts I and II of the Amended Complaint prior to discovery. New York agreed to proceed to summary judgment on those claims after West Virgina asserted discovery was not necessary because its claims involved purely legal questions but New York reserved its right under Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P) to assert that facts essential to its opposition are unavailable to it. *See* Joint Case Management Plan at 1-2, ECF 192. Accordingly, New York submits this response without having conducted discovery and declares pursuant to Rule 56(d) that "it cannot present facts essential to justify

1

its opposition" to certain facts stated by West Virginia and identified below for that reason.

1.  Traditional energy—that is coal, oil, and natural gas—is essential to American prosperity. Today, fossil fuels account for more than 83% of American energy production. *See Monthly Energy Review*, U.S. ENERGY INFO. ADMIN. (Oct. 2025), https://tinyurl.com/yb4tympa.

**Response 1:** New York objects and denies on the ground that the evidence provided is inadmissible hearsay and does not state that "[t]raditional energy—that is coal, oil and natural gas—is essential to American prosperity[,]" or that "fossil fuels account for more than 83% of American energy production." Additionally, New York denies this statement on the ground that the phrase "essential to American prosperity" is vague and ambiguous.

2.  Fossil fuel production employs millions of Americans, contributes billions to the economy each year, and provides the energy reliability and security that's necessary to keep the American economic engine running.

**Response 2:** New York objects and denies on the ground that West Virginia has not provided evidence in support of this statement as required by Fed.R.Civ.P 56(c)(1) and NDNY Local Rule 56.1(a). *See also Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001).

3.  Some Plaintiff States produce energy. All Plaintiff States consume it. And some States' economies would be devastated by production slowing—or worse, ceasing.

**Response 3:** New York objects and denies on the ground that West Virginia has not provided evidence in support of this statement as required by Fed.R.Civ.P 56(c)(1) and NDNY Local Rule 56.1(a). *See also Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001). New York further denies because, as New York's economics expert testifies, the Climate Act will not impact production. *See* Declaration of Don Fullerton, Ph.D. (Fullerton Decl.) ¶¶ 31, 36.

4. Fossil fuel production is critical to Plaintiff States' economies.

**Response 4:** New York objects and denies on the ground that West Virginia has not provided evidence in support of this statement as required by Fed.R.Civ.P 56(c)(1) and NDNY Local Rule 56.1(a). *See also Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001).

5. For instance, more than 12 percent of West Virginia's workforce is employed in the energy sector. Exhibit 1, Scott Adkins Decl., ¶ 7 (Oct. 1, 2025).

**Response 5:** Undisputed.

6. More than 150,000 Kentuckians are energy workers. Exhibit 2, Christopher Thacker Decl., ¶ 10 (Oct. 14, 2025).

**Response 6:** Undisputed.

7. The fossil fuel industry employs 63,000 North Dakotans. Exhibit 3, Nathan Anderson Decl., ¶ 6 (Oct. 3, 2025).

**Response 7:** Undisputed.

8. Nearly 1 million Texans work in energy production. Exhibit 4, Leslie Savage Decl., ¶ 7 (Oct. 17, 2025).

**Response 8:** Undisputed.

9.     The fossil fuel industry contributed about $18 billion to Utah's economy last year. Exhibit 5, John Rogers Decl., ¶ 8 (Oct. 27, 2025).

**Response 9:** Undisputed.

10.    And a staggering 16.5% of Wyoming's workforce is employed in the energy sector. Exhibit 6, Gagen Decl., ¶ 7 (Oct. 16, 2025).

**Response 10:** Undisputed.

11.    Energy workers' fossil fuel production creates severance tax revenue for Plaintiff States.

**Response 11:** New York objects and denies on the ground that West Virginia has not provided evidence in support of this statement as required by as required by Fed.R.Civ.P 56(c)(1) and NDNY Local Rule 56.1(a). *See also Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001).

12.    West Virginia and Wyoming bring in hundreds of millions of dollars in revenue annually from fossil fuel severance taxes. Exhibit 7, Matthew Irby Decl., ¶ 3 (Oct. 6, 2025); Exhibit 8, Matthew Sachse Decl., ¶ 5 (Oct. 14, 2025).

**Response 12:** Undisputed.

13.     Over the last five years, severance taxes added over $250 million to Arkansas's coffers. Exhibit 9, Todd Cockrill Decl., ¶¶ 6-7 (Oct. 3, 2025).

**Response 13:** Undisputed.

14.     North Dakota relies on "taxes related to oil and gas production" for "half of the State's revenue." Ex. 3, ¶ 5.

4

**Response 14:** Undisputed.

15.     And while other States aren't as reliant on them, severance taxes still fund parts of their budgets. *See* Exhibit 10, Christopher Ayotte Decl., ¶ 3 (Oct. 7, 2025) ("Nebraska collected $2,839,986.92 in natural resource severance tax."); Exhibit 11, Paul Woods Decl., ¶ 3 (Oct. 28, 2025) ("Idaho generated nearly $1 million in revenue from severance taxes."); Exhibit 12, Amanda McGraw Decl., ¶ 8 (Oct. 4, 2025) ("Tennessee obtained $466,796.56 in natural gas and crude oil severance taxes."); Ex. 5, ¶ 3 ("Utah generated approximately $76.3 million from state oil and gas severance tax.").

**Response 15:** Undisputed.

16.     Some States depend on consumption-based taxes on fossil fuels. *See* Ex. 12, ¶¶ 5-7 (stating that Tennessee received over $1.2 billion in motor fuel tax revenues in the last fiscal year); Ex. 5, ¶ 3 (stating that Utah collected more than $650 million in fuel tax revenues in the last fiscal year).

**Response 16:** Undisputed.

17.     Plaintiff States are major energy consumers, too.

**Response 17:** Undisputed.

18.     West Virginia spent nearly $10 million on fuel for its vehicle fleet last year. Exhibit 13, Kenneth Yoakum Decl., ¶ 2 (Oct. 1, 2025).

**Response 18:** Undisputed.

19.     And the State spent over $5 million powering thirty-three State-owned buildings. Exhibit 14, Robert Kilpatrick Decl., ¶ 6 (Oct. 2, 2025).

**Response 19:** Undisputed.

20.    The other Plaintiff States also spend millions of dollars annually to fulfill their sovereign duties. *See* Exhibit 15, Karen Perry Decl., ¶¶ 5-6 (Oct. 2, 2025) (stating that Arkansas State Police spent over $14 million on diesel and gasoline over the last five years); Exhibit 16, Jazzmin Randall Decl., ¶ 2 (Oct. 1, 2025) (stating that Georgia spent $43 million on fuel, petroleum, and other gas products in 2024); Exhibit 17, Tabetha Mallonee Decl., ¶ 7 (Oct. 6, 2025) (stating that the Kansas Attorney General's Office spent more than $28,000 on gasoline in fiscal year 2025); Exhibit 18, Karl Boston Decl., ¶ 3 (Sept. 26, 2025) (stating that South Carolina Department of Public Safety spent nearly $5 million last year on fuel for vehicles, including those used by law enforcement); Exhibit 19, Nolan Wiggins Decl., ¶ 3 (Sept. 29, 2025) (stating that South Carolina spent $5.6 million on fuel for State vehicles, excluding the vehicles used by the Department of Public Safety); Exhibit 20, Lee Wilkinson Decl.,¶ 2 (Oct. 29, 2025) (stating that Iowa spent more than $8 million on fuel for State transportation in 2024); Exhibit 21, Jason Glass Decl., ¶ 2 (Oct. 6, 2025) (stating that Kentucky Department of Agriculture spent over $400,000 on fuel for transportation needs in 2024); Exhibit 22, Andrew Kuhlmann Decl., ¶ 2 (Oct. 16, 2025) (stating that Wyoming spent $1.4 million on fuel for State transportation needs in 2024).

**Response 20:** Undisputed.

21.    And the Plaintiff States' residents consume fossil fuel energy.

**Response 21:** Undisputed.

22. For instance, Idahoans spent more than $7 billion consuming fossil fuels in 2023. Exhibit 23, Brenna Garro Decl., ¶ 4 (Oct. 27, 2025).

**Response 22:** Undisputed.

23. Utahns spent nearly $12 billion. Ex. 5, ¶ 7.

**Response 23:** Undisputed.

24. New York's Act will have adverse effects on energy production, employment, and consumption.

**Response 24:** New York objects and denies on the ground that West Virginia has not provided evidence in support of this statement as required by Fed.R.Civ.P 56(c)(1) and NDNY Local Rule 56.1(a). *See* Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). New York also denies this statement because the Climate Act will not have the stated effects. *See* Fullerton Decl. ¶¶ 22, 31, 36, 38.

25. Even "[u]nder conservative assumptions," the Act's penalties will "reduce the profitability of investment in fossil energy output by about 18 percent." Exhibit 24, Benjamin Zycher Decl., ¶ 11 (Oct. 30, 2025).

**Response 25:** New York objects to this statement on the ground that it is not supported by admissible evidence, *see* Fed.R.Civ.P 56(c)(2), for the reasons stated in New York's motion to strike Zycher's declaration, which has been filed simultaneously with this response.

New York also denies this statement based on Fullerton's testimony. The Climate Act's assessment on a fossil fuel company is based on its share of applicable emissions from fossil fuels extracted or crude oil refined from 2000 to 2024 and is

7

therefore a fixed cost that will have no effect on the marginal cost of production or the market price of fossil fuels. Fullerton Decl. ¶¶ 10(b), 17. The one-time retroactive assessment is a fixed cost that cannot be passed on to consumers by higher prices and will not change the incentives for assessed companies to produce and sell their products or to invest in new innovation or physical infrastructure. *Id.* ¶ 30-34. While the assessment may reduce net profit from past behavior, it will not affect the profit an assessed company can earn today or in the future because market price and marginal cost of production remain unchanged. *Id.* ¶ 31.

New York further denies this statement because Zycher's opinion is flawed. Zycher assumes without evidence that investors will believe that the State of New York will extend the Climate Act to apply to future fossil fuel company activities and therefore investors will view the Act as a tax on future behavior and not a fixed cost based on past conduct. *Id.* ¶ 42. Even if the Climate Act were to be extended and could be treated as a tax on future behavior, Zycher erroneously treats the Act as a tax on the investment in fossil fuel supply within the United States, rather than an assessment based on the greenhouse gas emissions attributable to the fossil fuels produced worldwide by the assessed company. *Id.* ¶¶ 45-46.

26. And the Act will cause a six-percent "production decline" and a 12-percent price increase. *Id.*

**Response 26:** New York objects to and denies this statement for the reasons stated in its response to Statement 25. In addition, Zycher's analysis implicitly assumes that the tax on investment applies to all existing companies and all potential

entrants to the industry rather than only the fossil fuel companies that receive assessments under the Climate Act. Fullerton Decl. ¶ 47. If the assessed companies reduced their investment in future fossil fuel supply, then other existing firms or new firms would make those same investments instead and expand their future fossil fuel supply. *Id.* Production will not decline and prices will not decrease. *Id.* If only a subset of companies face an assessment on fossil fuel extracting or refining, even if it were on future extraction or refining every year, forever, then other companies remain unassessed and can proceed to produce and sell fossil fuels at their unchanged marginal then other companies remain unassessed and can produce and sell fossil fuels at their unchanged marginal cost. *Id.* ¶ 49. That lower unchanged marginal cost of production would determine market price, which would also therefore be unchanged. *Id.* In addition, the annual value of fossil fuel production worldwide is $4.5 trillion, while the Climate Act seeks to collect $75 billion over 25 years, or $3 billion a year, which would not have any noticeable effect on a $4.5 trillion market. *Id.* ¶ 50.

27.     Even under the most generous assumptions, the "price increase would be about 6 percent." Id. ¶ 12.

**Response 27:** New York objects to and denies this statement for the reasons stated in its response to Statements 25 and 26.

28.     The price increase "would be observed quickly," resulting in "substantial" "increases in the cost of fuels consumed" by "West Virginia and a number of other states." Id. ¶¶ 14-15.

9

**Response 28:** New York objects to and denies this statement for the reasons stated in its response to Statements 25 and 26.

29. Put simply, "[u]nder any set of plausible assumptions ..., states would find themselves spending more for less fossil energy." *Id.* ¶ 55.

**Response 29:** New York objects to and denies this statement for the reasons stated in its response to Statements 25 and 26.

30. In addition to price increases, the Act injures States' pocketbooks another way. "A 6 percent production decline would reduce States' severance tax revenues by 6 percent, assuming the States calculate severance taxes based on production." *Id.* ¶ 44. Several States do just that. *Id.*

**Response 30:** New York objects to and denies this statement for the reasons stated in its response to Statements 25 and 26. New York further denies because the Climate Act will not affect any state's revenue from severance taxes because it will not change the price or production of fossil fuels. Fullerton Dec. ¶ 37.

31. The reduced profitability and production decline will affect the private Plaintiffs, too.

**Response 31:** New York objects and denies on the ground that West Virginia has not provided evidence in support of this statement as required by Fed.R.Civ.P. 56(c)(1) and NDNY Local Rule 56.1(a). *See also Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001). New York further denies this statement for the reasons stated in its response to Statements 25 and 26.

32. Indeed, "[b]ecause there cannot persist more than one price for a given

good in a given market – in particular for such homogeneous goods as fossil fuels – the price increase would be observed for all producers, both those affected formally by the penalty and those not." *Id.* ¶ 41.

**Response 32:** New York objects to and denies this statement for the reasons stated in its response to Statements 25 and 26.

33.   So the "decline in profitability" and "reduce[d] capital investment" is market-wide, *id.* ¶¶ 39-41, not limited to so-called "responsible part[ies]." N.Y. ENV'T CONSERV. LAW § 76-0101(21).

**Response 33:** New York objects to and denies this statement for the reasons stated in its response to Statements 25 and 26.

34.   The Gas and Oil Association of West Virginia, Inc. supports and advocates for over 400 member companies and thousands of employees in the fossil energy market. Exhibit 25, Charlie Burd Decl., ¶¶ 8, 10 (Oct. 30, 2025).

**Response 34:** Undisputed.

35.   And the West Virginia Coal Association has at least two members that "have produced sufficient quantities of coal over the relevant time period" to be a responsible party. Exhibit 26, Jason Bostic Decl., ¶¶ 4-5 (Oct. 31, 2025).

**Response 35:** New York denies this statement because N.Y. Env't Conserv. Law § 76-0103(4)(a) requires the New York State Department of Environmental Conservation ("DEC") to promulgate regulations to carry out the Act within thirty months after the effective date of the Act and issue notices of cost recovery demands no later than June thirtieth of the fourth calendar year following the effective date of

the Act for each responsible party's cost recovery demand, and DEC has not issued draft, let alone final, regulations to carry out the Climate Act, nor has DEC done any assessment of whether and to what extent any company may be a responsible party with a constitutionally sufficient nexus to the State to satisfy due process requirements.

New York also objects to this statement because West Virginia does not provide any evidence to show that two members will meet these requirements, as required by Fed.R.Civ.P 56(c)(1)and NDNY Local Rule 56.1(a). *See also Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001).

In addition, New York does not have facts essential to oppose this statement because discovery has not been conducted. New York does not believe that this statement is material to the pending summary judgment motions so does not seek discovery at this time. If the statement is deemed material, New York requests an opportunity to conduct discovery as provided by its agreement with West Virginia.

Dated:      December 19, 2025
            Albany, New York

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        *Attorney for Defendants*

                                    By: **/s/ *Ayah F. Badran***
                                        Ayah F. Badran (Bar No. 706184)
                                        Assistant Attorney General
                                        Office of the New York State Attorney General
                                        Environmental Protection Bureau
                                        The Capitol
                                        Albany, NY 12224
                                        (518) 776-2394

ayah.badran@ag.ny.gov

Monica Wagner (Bar No. 706690)
Deputy Bureau Chief

Sabita Krishnan (Bar No. 706712)
Laura Mirman-Heslin (Bar No. 704855)
Joya Sonnenfeldt (Bar No. 706511)
Assistant Attorneys General
Office of the New York State Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-8184