UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| STATE OF WEST VIRGINIA, et al., *Plaintiffs,* v. LETITIA JAMES, et al., *Defendants.* | Civil Action No. 1:25-cv-00168-BKS-DJS |

**BRIEF OF UNITED STATES SENATORS
SHELDON WHITEHOUSE AND KIRSTEN GILLIBRAND
AS AMICI CURIAE IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Christophe Courchesne*
Associate Professor and Director
ENVIRONMENTAL ADVOCACY CLINIC
Vermont Law and Graduate School
P.O. Box 96, 164 Chelsea St.
South Royalton, VT 05068
(802) 831-1630
ccourchesne@vermontlaw.edu

*Counsel for Amici Curiae United States Senators*

*\*Motion for Limited Appearance Pro Hac Vice Pending*

**TABLE OF CONTENTS**

INTERSET OF AMICI CURIAE ......................................................................................................... 1

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   The Clean Air Act does not preempt the Climate Act. ....................................................... 2

   A.   The Clean Air Act does not expressly preempt the Climate Act. ............................... 2

   B.   There is no field preemption of the Climate Act because the State law does not
        occupy the same field as the Clean Air Act. ............................................................... 3

   C.   There is no conflict preemption of the Climate Act because the State law does
        not conflict with the Clean Air Act. ............................................................................ 6

   D.   Plaintiffs' arguments would invert traditional federalism principles and risk
        invalidating a host of State laws. ................................................................................. 8

II.  Federal foreign policy does not preempt the Climate Act. ............................................... 10

CONCLUSION ............................................................................................................................. 12

**INTEREST OF AMICI CURIAE**[1]

As United States Senators, Amici Sheldon Whitehouse and Kirsten Gillibrand share an interest in maintaining an appropriate constitutional balance of power between federal and State governments. Senator Whitehouse is the ranking member of the Senate Environment and Public Works Committee, which has jurisdiction over the Clean Air Act and federal environmental policy. Senator Whitehouse has long worked at both domestic and global levels to address the harms of climate change. He was the sole representative of the U.S. federal government to attend the United Nations' 30th Conference of Parties in Belém, Brazil. Senator Gillibrand is the junior Senator from New York and represents over 19 million New Yorkers in the United States Senate. She has long worked to protect the health and safety of her constituents from the effects of climate change. Amici write to clarify that Congress—in the Clean Air Act, federal foreign policy, or otherwise—has never expressed the "clear and manifest purpose" that would be required to preempt New York's Climate Change Superfund Act ("Climate Act").

**INTRODUCTION**

The Tenth Amendment to the United States Constitution states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST., amend. X. Preemption of State laws is thus "a serious intrusion into state sovereignty." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488 (1996) (Stevens, J., plurality opinion).

---

[1] No party or counsel for any party authored this brief in whole or in part, no party or party's counsel contributed any money intended to fund the preparation or submission of this brief, and no person other than Amici or their counsel contributed money intended to fund this brief. *See* L.R. 7.2(d) (amicus brief disclosure requirements).

Plaintiffs ask this Court to adopt a view of preemption so broad that it would flip the constitutional balance of power between States and the federal government on its head. Under Plaintiffs' theory, rather than powers being reserved to States *unless* preempted by Congress, States lack authority to regulate in any arena that *could* be preempted by federal action – even where Congress has not enacted legislation or expressed a foreign policy doing so. If the Court finds preemption here, it is taking away Congress' power to choose when and how it preempts state law. This lawsuit ultimately seeks to derogate—not uphold—the power of Congress. Plaintiffs' theory is inconsistent with our federal structure and Congressional intent, and this Court should reject it.

## ARGUMENT

### I. The Clean Air Act does not preempt the Climate Act.

Congress in the Clean Air Act did not preempt state laws seeking compensation for harms from past emissions. Courts apply a "strong presumption" against federal preemption of state laws. *Richmond Boro Gun Club v. City of N.Y.*, 97 F.3d 681, 687 (2d Cir. 1996). This "presumption [] against preemption" applies with greatest force when States exercise their police powers, under which they "traditionally have had great latitude . . . to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 741, 756 (1985) (quoting *Slaughter-House Cases*, 83 U.S. 36, 62 (1872)). In such instances, Congress must express a "clear and manifest purpose" to preempt state action. *E.g.*, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

### A. The Clean Air Act does not expressly preempt the Climate Act.

Congress has traditionally used express preemption provisions when it intends to preempt state laws. *See, e.g.*, Energy Policy and Conservation Act, 42 U.S.C. §§ 6316, 6396. Plaintiffs do not argue that the Clean Air Act expressly preempts the Climate Act. Nor could they. The

Clean Air Act's sole express preemption provision prohibits States from setting motor vehicle emissions standards,[2] 42 U.S.C. § 7543(a), (e)(1), defined as requirements that "limit the quantity, rate, or concentration of emissions of air pollutants on a continuous basis," *id.* § 7602(k). The express preemption provision is narrow, relates only to motor vehicle emissions, and says nothing about liability for *harms caused by* past emissions.

### B. There is no field preemption of the Climate Act because the State law does not occupy the same field as the Clean Air Act.

Courts "rare[ly]" find field preemption. *Kansas v. Garcia*, 589 U.S. 191, 208 (2020). Field preemption only applies if the federal law occupies the relevant field "so comprehensively that it has left no room for supplementary state legislation." *R.J. Reynolds Tobacco Co. v. Durham Cty.*, 479 U.S. 130, 140 (1986). As a first step in determining whether Congress has implicitly preempted state laws in a particular field, courts must identify the field at issue. *Id.*

The Clean Air Act and the Climate Act occupy different fields. The Clean Air Act's cooperative federalism framework empowers EPA and the States to "limit[ ] the quantity, rate, or concentration of emissions of air pollutants on a continuous basis," 42 U.S.C. § 7602(k), and it recognizes a "primary" role for States in doing so, *id.* § 7401(a)(3). The Clean Air Act even contains a savings clause that enables States to impose stricter air pollution laws than the federal floor in most cases. *See* 42 U.S.C. § 7416.[3] It is entirely silent on States seeking compensation for harms caused by air pollution.

---

[2] Even this express preemption provision is not absolute: California may seek a waiver to impose its own motor vehicle emissions standards, 42 U.S.C. § 7543(b), (e)(2), and other States may adopt those standards, 42 U.S.C. §§ 7507, 7543(e)(2)(B).

[3] It is notable that, like the express preemption provision, the savings clause only discusses emissions standards and limitations. 42 U.S.C. § 7416. Wherever the statute discusses state power, it is only the state power to set technological, continuous limits on emissions. The statute is silent about other forms of State action that directly or potentially impact emissions, further strengthening the case for applying the presumption against preemption in this instance.

3

The Climate Act is a cost-recovery program to pay for harms caused to New Yorkers. It allocates financial liability based on responsible parties' historic shares of past greenhouse gas emissions. N.Y ENV'T CONSERV. LAW § 76-0103(3) (2024). Even if the covered parties cease all emissions-causing activities tomorrow, their potential obligations under the Climate Act (addressing harms arising from pollution emitted between 2000 and 2024) would be unchanged. The field the Climate Act occupies can be described as that of producer responsibility for costs incurred as a result of greenhouse gas pollution, akin to the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), after which the Climate Act was modeled. *See* 42 U.S.C. §§ 9601–9675. The two statutes occupy different fields, and the Clean Air Act does not preempt the Climate Act.

Congress itself has grappled with the fact that the Clean Air Act does not address the Climate Act's field of liability for harm caused by preexisting pollution. Members of Congress have introduced legislation that would require fossil fuel companies to contribute funds to address the harmful impacts of greenhouse gas pollution. *See* "Polluters Pay Climate Fund Act of 2024," H.R. 9573, 118th Cong. (2024); "Polluters Pay Climate Fund Act of 2025," S. 25, 119th Cong. (2025). These bills, modeled after CERCLA, build off an earlier proposal considered as part of the Build Back Better Act in 2021. *See* Lisa Friedman, *Democrats Seek $500 Billion in Climate Damages From Big Polluting Companies*, N.Y. TIMES (Aug. 4, 2021), https://tinyurl.com/a47957rb. The Polluters Pay Climate Fund Act and other state laws like it would not be necessary if the Clean Air Act already addressed greenhouse gas pollution liability.

For a parallel example, consider CERCLA and the Clean Water Act. The Clean Water Act, under the model of the Clean Air Act, regulates the emission (discharge) of pollutants into the nation's waterways. 33 U.S.C. § 1251. But the Clean Water Act does not assign

4

retrospective liability for the removal of pollutants already in the nation's waters. Indeed, the Supreme Court has recognized that the Clean Water Act "does not displace compensatory remedies for consequences of water pollution, even those for economic harms." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489 (2008). Instead, Congress enacted CERCLA to make polluters pay for the cleanup of hazardous waste sites, including contaminated rivers. If the Clean Water Act occupied that field, CERCLA would not be necessary.[4] In the same way, the Clean Air Act does not occupy the field of cost-recovery for pollution remediation, so it does not preempt the Climate Act.

     Even if the Climate Act's primary purpose was the regulation of greenhouse gases, it is hard to take seriously Plaintiffs' assertion that EPA has occupied a field that EPA (with Plaintiffs' encouragement) now seeks to abandon. EPA has proposed to find that the Clean Air Act does not allow it to regulate greenhouse gas emissions *at all*. Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36288 (proposed Aug. 1, 2025). If the Clean Air Act does not extend to regulation of greenhouse gas emissions, then the Clean Air Act plainly does not occupy the entire field of emissions regulation.[5] *See Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 770 (2019) (Gorsuch, J., plurality opinion) (rejecting argument for preemption of a state law where the federal government also lacked authority to regulate the activity).

---

[4] The fact that CERCLA is a federal statute makes no difference; many States have also passed their own CERCLA equivalents as well. *See* ENVIRONMENTAL LAW INSTITUTE, AN ANALYSIS OF STATE SUPERFUND PROGRAMS 133–269 (2002), https://perma.cc/VQR2-52N5.

[5] Plaintiffs' reliance on *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011) ("*AEP*"), does not solve their problem. Chamber Pls.' Memorandum of Law at 19–20, ECF No. 216-1. The Supreme Court's finding in that case was predicated on its earlier decision in *Massachusetts v. EPA*, 549 U.S. 497 (2007), which "made plain that emissions of carbon dioxide qualify as air pollution subject to regulation under the [Clean Air] Act." *AEP*, 564 U.S. at 424.

Plaintiffs' argument would require this Court to believe that in the Clean Air Act, Congress silently intended to preempt state laws in any way touching on an entire class of emissions that the current EPA contends is *not covered by the Clean Air Act* and in any event is withdrawing from regulating. Indeed, other than motor vehicle emissions and certain other standards that EPA is moving to withdraw, EPA has never actually implemented greenhouse gas emissions standards for any other source category. That "field," with no regulation by EPA, is hardly "occupied." Plaintiffs' argument turns preemption standards – and the constitutional balance of powers – on their heads. *See* U.S. CONST., amend. X; *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) ("[M]atters left unaddressed" by a "federal statutory regulation that is comprehensive and detailed" are "presumably left subject to the disposition provided by state law.").

Field preemption does not apply here, because the Clean Air Act and the Climate Act do not occupy the same field.

### C. There is no conflict preemption of the Climate Act because the State law does not conflict with the Clean Air Act.

Finally, the Climate Act is not preempted under conflict preemption because it does not "directly conflict[] with the structure and purpose" of the Clean Air Act. *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013). Plaintiffs must meet a "high threshold" to demonstrate conflict preemption. *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011) (quotation omitted). This analysis "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law." *Id.* (quotation omitted). Rather, "a conflict will be found where compliance with both federal and state regulations is a physical impossibility, or where the state law stands as an obstacle to the

6

accomplishment and execution of the full purposes and objectives of Congress." *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 158 (1978) (citation modified). "[T]he repugnance or conflict [must be] so direct and positive that the two acts cannot be reconciled or consistently stand together." *In re MTBE*, 725 F.3d at 102 (quoting *Madeira v. Affordable Hous. Found.*, 469 F.3d 219, 241 (2d Cir. 2006)).

Plaintiffs do not meet their burden here. Compliance with both the state Climate Act and the Clean Air Act is not a "physical impossibility." *Ray*, 435 U.S. at 158. One act requires payment into a fund; the other requires (when EPA and state permitting authorities actually impose greenhouse gas emissions standards) reduction of air emissions. *See supra* at 3–4. Covered parties are perfectly capable of doing both. Nor does the Climate Act present an obstacle to the accomplishment of the Clean Air Act's purpose of "protect[ing] and enhanc[ing] the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1); *see also id.* § 7401(c) ("A primary goal of this chapter is to encourage or otherwise promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for pollution prevention."). Rather, the Climate Act supplements the purpose of the Clean Air Act by addressing liability for harms from past pollution.

And in fact, the Clean Air Act's cooperative federalism scheme is one of its "defining feature[s]." *Genon Rema, LLC v. EPA*, 722 F.3d 513, 516 (3d Cir. 2013). Far from foreclosing supplemental state action, the Clean Air Act explicitly states that "air pollution prevention . . . is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3); *see also Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 167 (2016) (Sotomayor, J., concurring) ("[W]here 'coordinate[d] state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a

less persuasive one.'") (quoting *N.Y. State Dept. of Social Servs. v. Dublino*, 413 U.S. 405, 421 (1973)).

Unable to identify an actual conflict, Plaintiffs rely on vague allegations that the Climate Act is in tension with the Clean Air Act's "regulatory scheme." State Pls.' Memorandum of Law at 47, ECF No. 217-1 (hereinafter, States' Br.). This is, at best, the sort of "brooding federal interest" that is not sufficient to establish conflict preemption. *Va. Uranium*, 587 U.S. at 767; *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) ("To prevail on the claim that the regulations have pre-emptive effect, petitioner must establish more than that they 'touch upon' or 'relate to' that subject matter."). Indeed, Plaintiffs' arguments that the Climate Act would undermine "carefully calibrated federal rules," States' Br. at 49, are strikingly similar to the *Virginia Uranium* plaintiffs' arguments that the State law there "disrupt[ed] the delicate balance" Congress had created in the nuclear energy field. *Va. Uranium*, 507 U.S. at 777. As Justice Gorsuch explained in rejecting these arguments, "sound preemption analysis cannot be as simplistic as that." *Id.* at 778.

The Climate Act complements, not conflicts with, the Clean Air Act. Plaintiffs' wish that a conflict "must be in there somewhere" is not enough. *Id.* at 767.

### D. Plaintiffs' arguments would invert traditional federalism principles and risk invalidating a host of State laws.

The Climate Act is an exercise of New York's traditional state authority to protect its citizens. States have historically protected their citizens from harms like inundation and extreme weather, and States are empowered to raise funds to address these harms from the entities that caused them. Although a new law, the Climate Act is in these regards a wholly traditional state effort. *See, e.g.*, *Medtronic*, 518 U.S. at 475 (recognizing historic State authority to use "police powers to protect the health and safety of their citizens"). Even if Plaintiffs were right that the

8

Climate Act might have the indirect effect of causing fossil fuel producers to reduce their emissions, such "incidental effect[s]" would not be enough to justify finding the Climate Act preempted. *See Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 101 (2d Cir. 2017) ("incidental effect" on matter regulated by federal statute insufficient to show preemption).

To hold otherwise would curtail States' power to protect their citizens and threaten a range of State laws. *See Addington v. Texas*, 441 U.S. 418, 431 (1979) ("The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold."). It is not difficult to find state laws that collect revenue to address potential harms caused by otherwise lawful regulated activity. For instance, many States have passed or are considering legislation assigning manufacturers of products responsibility for the recycling or disposal of their own packaging. *See Guide for EPR Proposals*, SUSTAINABLE PACKAGING COALITION (visited Dec. 22, 2025), https://perma.cc/2D86-HFKN. All States tax gasoline and use most of the funding for road repair and maintenance, or transit projects. *See What Are State Gas Taxes and How Are They Used?*, TAX POLICY CENTER (2025), https://tinyurl.com/5ykv3xsv. And Oklahoma taxes oil and gas production to pay for capping orphan wells (although companies may request rebates). *See* OKLA. STAT. tit. 52, § 288 (2024). That the taxed activity is lawful and subject to federal regulation does not negate the States' ability to raise revenue to protect their citizens from harms associated with the activity.

Plaintiffs' vision of preemption is broader than courts apply even when considering *express* preemption provisions. When statutes contain broad express preemption provisions – which the Clean Air Act does not – courts interpret those provisions in light of the presumption against interfering with States' historic powers. *See Air Conditioning and Refrigeration Inst. v. Energy Res. Conserv. and Dev. Comm'n*, 410 F.3d 492, 497 (9th Cir. 2005) (adopting "narrow

9

interpretation" of preemption provision to comply with presumption against preemption and avoid supplanting state law); *Marathon Petroleum Co. v. Stumbo*, 528 F. Supp. 2d 639, 651–52 (E.D. Ky. 2007) (discussing presumption against preemption and need to respect States' historic police powers). For example, courts have upheld States' ability to protect children's wellbeing, enforce state-level building codes, and bring state antitrust claims against natural gas companies, even in the face of express federal preemption provisions. *See Council for Responsible Nutrition v. James*, 159 F.4th 155, 170–71 (2d Cir. 2025); *Mulhern Gas Co. v. Mosley*, No. 1:23-CV-1267, 2025 WL 2062194, at *13–16 (N.D.N.Y. July 23, 2025); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F. 3d 716, 729–36 (9th Cir. 2013). The Second Circuit recently affirmed the presumption against preemption and held that courts must interpret statutes against preemption when plausible. *Council for Responsible Nutrition*, 159 F.4th at 171; *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (Courts "have a duty to accept the reading that disfavors pre-emption."). The Clean Air Act lacks any indication that Congress clearly and manifestly intended it to preempt state statutes like the Climate Act. Plaintiffs would have this Court discard the presumption *against* preemption and instead apply a presumption *of* preemption. This Court should not do so.

## II. Federal foreign policy does not preempt the Climate Act.

Plaintiffs have not identified any express federal foreign policy that conflicts with the Climate Act. States' Br. at 36–39. That is because none exists. Congress has not articulated any federal foreign policy relating to liability for harms caused by greenhouse gas emissions. In fact, the Climate Act's liability scheme apportioning costs based on historic greenhouse gas emissions is directly consistent with the "polluter pays" principle, which is one of the most fundamental concepts of global environmental law and which has been repeatedly embraced by the United States. *See* Koh Decl. ¶¶ 13–17, ECF No. 230-8.

10

Few federal statutes or Congressionally-ratified treaties express a position at all on climate foreign policy. They certainly do not add up to a federal foreign policy that is strong enough to preempt the Climate Act or that is inconsistent with the Climate Act in any way. One federal statute, establishing the National Climate Program, recognizes that climate change occurs on a global basis and states that "[i]nternational cooperation for the purpose of sharing the benefits and costs of a global effort to understand climate is essential." 15 U.S.C. § 2901(5). Another statute, which establishes the U.S. Global Change Research Program, instructs the President to direct the Secretary of State to "initiate discussions with other nations leading toward international protocols and other agreements to coordinate global change research activities," including "[a]llocation of costs in global change research programs." *Id.* § 2952(a). To the extent a federal foreign policy on climate change can be extrapolated from these statutes, it is a preference for coordinating global research activities. There is no tension between these federal statutes and the Climate Act.

Plaintiffs identify no Congressionally-ratified treaties that express a federal foreign policy in conflict with the Climate Act. They gesture vaguely at the U.N. Framework Convention on Climate Change ("UNFCCC") and the Paris Agreement, but neither does the work Plaintiffs need it to. The UNFCCC creates a general framework for international cooperation between sovereign nations on climate change, but it does not address liability by industry polluters, nor even include binding emissions reduction requirements. And the United States' withdrawal from the Paris Agreement and its absence at the recent COP30 talks in Belém, Brazil (save for *Amicus* Senator Whitehouse) merely reflect U.S. withdrawal from the field of international climate negotiations – and certainly not an established foreign policy regarding cost recovery for climate damages. The United States' inconsistent actions on the international stage are a far cry from an

11

express federal foreign policy that would actively conflict with and preempt the Climate Act.

Grasping at straws, Plaintiffs claim U.S. opposition to "liability and compensation schemes at the international level." States' Br. at 37. But, read in context, that supposed opposition refers to arrangements requiring certain countries (generally, larger industrialized countries) to compensate others (generally, smaller developing countries) for the harms of climate change. *See* Telephone Interview with Todd Stern, Special Envoy for Climate Change, U.S. DEP'T OF STATE (Oct. 28, 2015), https://perma.cc/E2SM-NT8R. Again, there is no tension between that position and the Climate Act imposing private corporate liability on fossil fuel companies for pollution-related costs incurred within a state's borders. *See* Koh Decl. ¶¶ 31–33.

The Climate Act does not conflict with, and is not preempted by, any federal foreign policy expressed by Congress through legislation or Congressionally-ratified treaty.

## CONCLUSION

Neither the Clean Air Act nor express federal foreign policy preempts the Climate Act. Plaintiffs' arguments to the contrary would require this Court to adopt an untenably broad view of federal preemption. We respectfully urge this Court to reject Plaintiffs' arguments and grant summary judgment in favor of New York.

Dated: December 22, 2025

Respectfully submitted,

/s/Christophe Courchesne
Christophe Courchesne*
Associate Professor and Director
ENVIRONMENTAL ADVOCACY CLINIC
Vermont Law and Graduate School
P.O. Box 96
164 Chelsea St.
South Royalton, VT 05068
(802) 831-1630
ccourchesne@vermontlaw.edu

*Counsel for Amici Curiae United States Senators*

**Motion for Limited Appearance*
*Pro Hac Vice Pending*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 22, 2025

*/s/ Christophe Courchesne*
Christophe Courchesne
Counsel for Amici Curiae