

State of West Virginia
Office of the Attorney General

John B. McCuskey  
Attorney General

Phone: (304) 558-2021  
Fax: (304) 558-0140

January 23, 2026

<u>Via CM/ECF</u>
The Honorable Daniel J. Stewart
U.S. Magistrate Judge
United States District Court for the Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, 4th Floor
Albany, New York 12207

  Re: *West Virginia v. James*, No. 1:25-cv-00168-BKS-DJS

Dear Magistrate Judge Stewart:

  Pursuant to Local Rule 7.1(a)(2), Plaintiffs States, West Virginia Coal Association, Gas and Oil Association of West Virginia, Inc., America's Coal Associations, and Alpha Metallurgical Resources, Inc. (collectively, "West Virginia") request a pretrial conference about a proposed motion to strike (1) the declaration by economist Don Fullerton, ECF 229-2 ("Fullerton Decl."), (2) the declaration by climatologist Justin Mankin, ECF 229-5 ("Mankin Decl."), and (3) the declaration by lawyer Harold Hongju Koh, ECF 230-8 ("Koh Decl."). Defendants submitted these declarations in response to plaintiffs' motions for partial summary judgment and in support of defendants' motion for partial summary judgment.

  A party may submit a declaration in support of a motion for summary judgment if it "set[s] out facts that would be admissible in evidence and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Defendants' experts' declarations are inadmissible. They do not meet the requirements for expert testimony established by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

  West Virginia has discussed its proposed motion with counsel for New York. Defendants intend to oppose the motion.

# BACKGROUND

New York's Climate Change Superfund Act authorizes the State to impose $75 billion in "strict liability" on fossil fuel companies for their alleged contributions to greenhouse gas emissions and, by extension, climate change. N.Y. ENV'T CONSERV. LAW §§ 76-0101(6), 76-0103(2)(a). In particular, the law is meant to address "the pollution of the atmosphere by greenhouse gas buildup as a result of burning fossil fuels." N.Y. LEGIS. 679 § 2(2) (2024), 2024 SESS. L. NEWS OF N.Y. Ch. 679 (S. 2129-B).

The parties have cross-moved for partial summary judgment. West Virginia argues that the Act is preempted by both federal common law and the Clean Air Act, is an unconstitutional extraterritorial regulation, and is a violation of the foreign affairs doctrine. On the other hand, New York argues that all Plaintiffs lack standing, no federal law preempts the Act, and the Eleventh Amendment bars West Virginia's claims against Acting Tax Commissioner Hiller.

# ARGUMENT

New York's experts' declarations are inadmissible. The Fullerton declaration relies on unrealistic assumptions and undefined "models." And it ignores the record evidence. The Mankin declaration is irrelevant to the preemption issues before the Court. The Koh declaration provides only legal opinions that belong (if anywhere) in an amicus brief. Expert testimony on the law has no place under Rule 702. The Court should therefore permit West Virginia to move to strike all three expert declarations.

## I.     Dr. Fullerton's Declaration is Inadmissible.

### A.     Dr. Fullerton's Declaration

Dr. Fullerton is a professor emeritus of finance at the University of Illinois Urbana-Champaign. Fullerton Decl. ¶ 2. He is also an affiliate of the Environmental Markets Lab at the University of California, Santa Barbara Bren School of the Environment. *Id.* He has a Ph.D. in economics from the University of California, Berkeley. *Id.*

Despite having dozens of declarations available from the States, private plaintiffs, and organizational plaintiffs, Dr. Fullerton reviewed none of them. Fullerton Decl. ¶ 7. Instead, he read only briefing and Dr. Zycher's declaration. *Id.* ¶ 7. Without record evidence, his opinions are divorced from the facts of the case and therefore irrelevant.

His declaration contends that (1) the Act's $75 billion strict liability scheme won't directly affect prices, (2) will have only "negligible indirect effects" on price and behavior, (3) the Act is not an economic regulation, and (4) the Act won't affect fossil-fuel investments.

To support his first contention, Dr. Fullerton theorizes that companies consider costs to be either "fixed" or "marginal"—with no other possible classifications. Fullerton Decl. ¶¶ 11-19. He says that companies treat "government tax or regulatory policy" as fixed costs. *Id.* ¶ 12. He apparently likens the Act's strict liability scheme to regulatory policy, and concludes that companies will treat cost assessments as fixed costs. *Id.* ¶¶ 12, 14. He also argues that additional fixed costs don't affect pricing decisions. *Id.* ¶¶ 13, 15-17. So he says "a fossil fuel company is

2

unlikely to be able to change its own price of coal … or refined petroleum." *Id.* ¶ 17. Dr. Fullerton's theory is based on "models." *Id.* ¶¶ 11-19. Which models? He doesn't say. Just the "standard" ones. He doesn't identify the model used, why that model was chosen, how that model has been applied to retroactive strict liability schemes imposed on entire industries, and how those models were eventually tested.

Dr. Fullerton assumes that targeted "companies and their shareholders will fully absorb" the Act's assessments. *Id.* ¶ 10.d. In other words, he assumes that the targeted companies will accept billion-dollar losses. He likewise assumes that billion-dollar losses have "no effect on behavior." *Id.* And he assumes that companies will neither attempt to recuperate their billion-dollar losses through price hikes nor modify their conduct to avoid future billion-dollar losses. *Id.* ¶¶ 10.c – 10.f. Lastly, he assumes that companies being assessed can survive the Act's assessments and maintain consistent capital investment. These must be assumptions because he hasn't reviewed any record evidence or spoken to any targeted companies or their shareholders.

For his second contention, Dr. Fullerton acknowledges that the unidentified "models" don't account for indirect impacts like "concerns about future liability." Fullerton Decl. ¶ 20. He at least acknowledges that some "fixed cost[s]" are "so large that a company goes out of business," which would "affect market price." *Id.* But he claims that "[f]or large oil companies," assessments "will be a relatively small fraction of profits and will not disrupt … operations." *Id.* ¶ 21. Even if that were true, the Act doesn't only apply to "large oil companies." *See* N.Y. ENV'T CONSERV. LAW § 76-0101(21) (defining "responsible party" to include entities "engaged in the trade or business of extracting fossil fuel"). It applies to coal companies operating in a less robust market, too. *Id.* Regardless, despite the lack of indirect-impact models, and despite the lack of "empirical model[s]" about company expectations, and despite his failure to review declarations, Dr. Fullerton is "reasonabl[y] … certain[]" that the Act will not affect prices or behavior." Fullerton Decl. ¶ 26.

Although he treats the Act as a "regulatory policy" in the unidentified models mentioned throughout the first twenty-six paragraphs of his declaration, Dr. Fullerton next contends that the Act isn't an "economic regulation" at all. Fullerton Decl. ¶¶ 27-31. He bases this contention on his flawed conclusion that the Act won't have any economic effect. *Id.* ¶ 29.

Finally, Dr. Fullerton contends that the Act will not affect "incentive to invest." Fullerton Decl. ¶¶ 32-39. That's a careful choice of words. Dr. Fullerton opines that incentive to invest "depends on a company's estimation of potential future net profits." *Id.* ¶ 33. He says little about companies' *ability* to invest after forking over billions of dollars to New York. He waves off cash shortages by telling companies to just go into debt "by borrowing." *Id.* ¶ 34. And if they can't do that, he says someone else will. *Id.* Unsurprisingly, this entire section lacks any citations at all.

### B. Dr. Fullerton's Declaration Doesn't Meet Rule 702's Admissibility Requirements.

Dr. Fullerton's declaration stacks assumptions on assumptions. And while he claims his opinions are model-based, he doesn't identify the model, how it was built, or how it was tested. His theory only works if *all* fossil fuel companies act in accordance with his assumptions. The record evidence suggests they won't. And Dr. Fullerton hasn't even reviewed—let alone relied on—the available record evidence. So he lacks a proper foundation for his opinions, and his testimony is not based on reliable principles or methods.

3

A qualified expert may testify only if he meets four conditions. Expert testimony must help the trier of fact determine a fact in issue. Fed. R. Evid. 702(a). The testimony must be based on "sufficient facts or data." Fed. R. Evid. 702(b). It must be the "product of reliable principles and methods." Fed. R. Evid. 702(c). And it must "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

Dr. Fullerton's declaration fails to meet three of these requirements. First, his testimony isn't based on any facts or data. He didn't even review the parties' factual declarations. His only "data" includes theoretical assumptions based on unidentified "models." Second, his declaration is not the product of reliable principles and methods. Again, Dr. Fullerton proclaims that "models" support him. But he never shows his work. Plaintiffs and the Court are left to guess which models he relies on and how the methodology produced those unidentified models. Third, without facts and without methodology, there can't be a reliable application of principles and methods to the facts of the case. Instead, we are left with theory and conjecture.

In sum, Dr. Fullerton's theory asks the Court to reject both Plaintiffs' declarations and "basic economics," which "tell[s] us that the increased cost of … conduct will make that conduct less common." *NRDC v. NHTSA*, 894 F.3d 95, 105 (2d Cir. 2018) (cleaned up).

Finally, while his declaration could presumably assist with a standing determination, Dr. Fullerton admits that the assessments will affect "fossil fuel companies and their shareholders." Fullerton Decl. ¶ 10.d. So those companies—at least one of which is a plaintiff here—concededly have standing. What's more, Dr. Fullerton concedes that cost recovery demands could be "so large that a company goes out of business." *Id.* ¶ 21. In that case, he admits that "temporary disruptions may affect market price until other firms expand their investments and production." *Id.* And he concedes that cost recovery demands could "leave a fossil fuel company with too little cash and no outside source of finance to make promising investments in future production." *Id.* ¶ 34.

Alpha Metallurgical Resources (formerly Contura) confirmed—in a declaration Dr. Fullerton did not review—that it is expected to incur $68 million in annual payments to New York for 25 years. ECF No. 217-33. That annual payment accounts for 36% of Alpha's net income in 2024. *See* Form 10-K, Alpha Metallurgical Resources, Inc., at 84, *available at* https://tinyurl.com/a6auur53. It's hard to imagine that a 36% annual reduction in net income wouldn't affect investment and production. Regardless, the Court only needs to find that one plaintiff has standing for each form of relief sought. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006). Dr. Fullerton's declaration, therefore, isn't all that helpful.

Dr. Fullerton's declaration should be stricken.

## II.     Dr. Mankin's Declaration is Inadmissible.

### A.  Dr. Mankin's Declaration

Dr. Mankin's declaration is irrelevant.

4

He is an associate professor in Dartmouth College's Department of Geography.  Mankin Decl. ¶ 2.  He holds a Ph.D. in environment and resources.  *Id.*  He claims expertise in "climate variability and dynamics; climate attribution, prediction, and projection; drought and ecohydrology; earth system modeling; and the socioeconomic and ecosystem impacts of climate change." *Id.* ¶ 4.

Dr. Mankin's declaration is intended "to explain the different types of emissions that climate scientists consider in connection with attributing greenhouse gas emissions to companies that extract or refine and then sell fossil fuels."  Mankin Decl. ¶ 7.  He also opines on "the methodological approaches scientists take in making attributions of particular climate-change harms from the greenhouse gas emissions traceable to particular fossil fuel extractors or refiners." *Id.*

Dr. Mankin claims that his theories and opinions are "consensus-based."  Mankin Decl. ¶ 10.  But even if that were true (it's not), he wasn't "asked to review any specific proposed attribution methods that the New York State Department of Environmental Conservation may apply in the future in developing or adopting regulations to implement the Act."  *Id.*  So he just opines generally that attribution science "can assess the causal role of particular greenhouse gas emissions to state-level harms." *Id.*

### B.  Dr. Mankin's Declaration is Irrelevant.

Dr. Mankin's declaration is irrelevant to the preemption issues before the Court.  Dr. Mankin's declaration can be boiled down to one opinion: He thinks the New York Legislature's policy choice is a good one.  That opinion provides no value here.

Evidence is relevant if it "has any tendency to make a fact"—"of consequence in determining the action"—"more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a)-(b).  The expert testimony standard incorporates the relevance standard.  Expert testimony must help the trier of fact determine a fact in issue.  Fed. R. Evid. 702(a).

Dr. Mankin's testimony has no tendency to help the Court decide whether federal common law, the U.S. Constitution, or the Clean Air Act preempts the Act.  And it doesn't touch on standing either.

Dr. Mankin's opinions are irrelevant to any liability determination, too.  The Act imposes strict liability.  So it doesn't matter to New York whether a particular company's emissions caused harm in the State or not.  Energy producers are "strictly liable, without regard to fault."  N.Y. ENV'T CONSERV. LAW § 76-0103(3)(a).

West Virginia reserves additional *Daubert* arguments should Dr. Mankin's opinions become relevant in the future.  For now, they're not.  His declaration should be stricken.

### III.    Mr. Koh's Declaration is Inadmissible.

### A.  Mr. Koh's Declaration

Mr. Koh's declaration is an amicus brief disguised as expert testimony.

5

Mr. Koh is a lawyer and international law professor at Yale Law School. Koh Decl. ¶ 2. He has legal experience in government, academia, and private practice. *Id.* ¶¶ 3-9.

Mr. Koh opines on "international law, multilateral agreements, and United States climate policy." Koh Decl. ¶ 10. More specifically, Mr. Koh opines that international law recognizes a "polluter pays" principle. *Id.* ¶ 12. And he states that international agreements don't address "the liability of corporations or other private entities for costs for harms and adaptation needs caused by climate change." *Id.* In his legal opinion, the Act is consistent with the 2015 Paris Agreement. *Id.*

### B. Mr. Koh's Declaration is Doesn't Meet Rule 702's Admissibility Requirements.

Mr. Koh's declaration is inadmissible. "As a general rule an expert's testimony on issues of law is inadmiss[i]ble." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (cleaned up). "Courts … disqualify experts to the extent that they "provide[ ] legal opinions, legal conclusions, or interpret[ ] legal terms; those roles fall solely within the province of the court." *Sabby Volatility Warrant Master Fund Ltd. v. Kennedy*, 23-CV-00601 (JGK) (RFT), 2025 WL 3640229, at *6 (S.D.N.Y. Dec. 16, 2025) (cleaned up). Specifically, "an expert's legal opinion on the meaning of certain contract terms" is an inadmissible "invasion of the court's authority." *Bilzerian*, 926 at 1294.

Mr. Koh's testimony is only a "legal opinion"—and that's all it purports to be. He provides legal opinions on international law and the terms of international agreements. Those opinions don't help the trier of fact determine a fact in issue. Fed. R. Evid. 702(a). Instead, they attempt to instruct the Court on the law. Rule 702 doesn't allow experts to tell the Court what the law is. So Mr. Koh's declaration should be stricken.

### CONCLUSION

The Court should permit West Virginia to file a motion to strike New York's experts' declarations. West Virginia proposes that its motion to strike be briefed in accordance with the briefing schedule for the parties' summary judgment motions. Per New York's request and agreement of the parties, West Virginia asks that the summary judgment briefing schedule be modified. The following proposal encompasses briefing for all currently pending motions:

**Feb. 13, 2026**: Plaintiffs' Summary Judgment Opposition/Reply Briefs; West Virginia Opposition to Defendants' Motion to Strike; and Plaintiffs' Motions to Strike Due

**March 27, 2026**: Defendants' Summary Judgment Reply Brief; Reply Brief on Defendants' Motion to Strike; and Oppositions to Plaintiffs' Motions to Strike Due

**April 3, 2026**: Plaintiffs' Replies in support of Motions to Strike Due

This briefing schedule has been agreed to by all plaintiffs and all defendants.

6

Respectfully,

/s/ Caleb B. David
Caleb B. David (NDNY Bar No. 706303)
Deputy Solicitor General
and Special Counsel
Office of the Attorney General of West Virginia
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301
(304) 558-2021
caleb.b.david@wvago.gov