# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

STATE OF WEST VIRGINIA, et al.,

*Plaintiffs*,

v.

LETITIA JAMES, et al.,

*Defendants*.

Civil Action No. 1:25-cv-00168-BKS-DJS

**MEMORANDUM IN SUPPORT OF PLAINTIFFS CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, AMERICAN PETROLEUM INSTITUTE, NATIONAL MINING ASSOCIATION, AND THE BUSINESS COUNCIL OF NEW YORK STATE, INC.'S MOTION TO STRIKE THE DECLARATIONS OF <u>JUSTIN MANKIN, DON FULLERTON, AND HAROLD KOH</u>**

**Table of Contents**

Introduction ............................................................................................................. 1

Background ............................................................................................................. 3

    A. New York's Act and procedural history. ................................................... 3

    B. The Mankin declaration. ............................................................................ 3

    C. The Fullerton declaration. .......................................................................... 4

    D. The Koh declaration. .................................................................................. 5

Argument ................................................................................................................ 6

    I. Dr. Mankin's declaration is irrelevant and should be stricken. ................. 7

    A. Dr. Mankin's declaration is not relevant to the issues involved in the parties' cross-motions for summary judgment. ................................................................ 7

    B. Dr. Mankin's declaration relies on defective methodology. ..................... 9

    II. Dr. Fullerton's declaration is irrelevant and should be stricken. ............... 12

    A. Dr. Fullerton's declaration is not relevant to the issues involved in the parties' cross-motions for summary judgment. ....................................................... 12

    B. Dr. Fullerton's declaration relies upon defective methodology ............... 14

    III. Professor Koh's declaration should be stricken because it is irrelevant and includes improper legal opinions. ...................................................................... 14

Conclusion .............................................................................................................. 16

**Table of Authorities**

Page(s)

**Cases**

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
 743 F. Supp. 3d 530 (S.D.N.Y. 2024)................................................................6, 12, 15

*Carmichael v. City of New York*,
 34 F. Supp. 3d 252 (E.D.N.Y. 2014) ...............................................................6, 9

*City of New York v. BP PLC*,
 325 F. Supp. 3d 466 (S.D.N.Y. 2018)..............................................................8

*City of New York v. Chevron Corp.*,
 993 F.3d 81 (2d Cir. 2021).................................................1, 2, 7, 8, 12, 13, 15

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000)........................................................................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)........................................................................................6

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
 314 F.3d 48 (2d Cir. 2002)..............................................................................6

*Haight v. NYU Langone Med. Ctr., Inc.*,
 2016 WL 29628 (S.D.N.Y. Jan. 4, 2016) ......................................................15

*Hygh v. Jacobs*,
 961 F.2d 359 (2d Cir. 1992)............................................................................1, 12

*Int'l Paper Co. v. Ouellette*,
 479 U.S. 481 (1987)........................................................................................7

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
 542 F.3d 290 (2d Cir. 2008)............................................................................1

*United States v. Williams*,
 506 F.3d 151 (2d Cir. 2007)............................................................................6

**Statutes & Rules**

Fed. R. Civ. P. 26...................................................................................................2

Fed. R. Civ. P. 44.1................................................................................................15

Fed. R. Evid. 401 ...................................................................................................1

Fed. R. Evid. 402 ...................................................................................................................6

Fed. R. Evid. 403 ...................................................................................................................6

Fed. R. Evid. 702 ................................................................................................................1, 6

N.Y. Env't Conserv. L. § 76-0101 .......................................................................................3, 8

**Other Authorities**

IPCC, AR6, Chapter 11: Frequently Asked Questions, FAQ 11.3,
https://perma.cc/47AR-AV74 ...................................................................................10

IPCC, AR6, Chapter 12 (2021), https://perma.cc/DKC4-8DDW ......................................10

Jonathan Klick, *States Looking for Free Lunch with Climate Superfund Laws*,
Wash. L. Found. (Oct. 1, 2025), https://perma.cc/PKL8-6U83 ...............................14

Joy Utech, *Q&A with Dartmouth Researchers Who Found Companies Caused
$28 Trillion Climate Damage*, The Dartmouth (May 6, 2025),
https://perma.cc/SR3D-GME7 ..................................................................................11

Justin S. Mankin & Marc Willers KC, Scientific Evidence in Corporate Climate
Litigation, *Corporate Climate Litigation: Global Perspectives and Legal
Tactics*, Brit. Inst. of Int'l and Compar. L. (July 1, 2025),
https://perma.cc/XNQ9-D5PK ..................................................................................11

Matthew C. Wickersham & Briana Matusovsky, *The Evidentiary Admissibility of
Extreme Weather Event Attribution*, 53 Rutgers L. Rec. 123, 126 (2025) ........................10, 11

N.Y. State Assemb., June 7, 2024, Chamber Debate, 2023-24 Legislative Session
(June 7, 2024), https://perma.cc/WF4Z-ZNPY.........................................................9

Thomas Lewton, *The Secret Weapon That Could Finally Force Climate Action*,
New Scientist (Jan. 6, 2026), https://perma.cc/D45K-3N88, archived at
https://perma.cc/K99C-XNNG ..................................................................................11

**Introduction**

It is blackletter law that courts may not rely upon expert declarations that are legally and factually irrelevant to the issues involved in the matter before them. Federal Rule of Evidence 401 allows only the admission of evidence "of consequence in determining" the issues presently before the Court. Fed. R. Evid. 401(b). And Rule 702 allows expert testimony only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Where, as here, the claims before the Court present pure questions of law and there is no dispute of material fact, expert testimony is both unnecessary and improper because it cannot assist the trier of fact or alter the legal analysis. *See, e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (citation omitted); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).

The parties' cross-motions for partial summary judgment on Counts I and II of the Complaint turn exclusively on questions of law arising from constitutional structure and federal preemption: whether New York has the authority under the U.S. Constitution and the Clean Air Act to impose state law liability upon a select group of energy producers for global greenhouse gas emissions, the vast majority of which originate beyond New York's borders. The answer to those questions is controlled by binding Second Circuit precedent. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 90-100 (2d Cir. 2021). As explained in Plaintiffs' summary judgment briefing, that precedent forecloses New York's attempt to impose liability under state law for global greenhouse gas emissions and requires that New York's Act be held unconstitutional and preempted by the Clean Air Act. ECF 216-1 at 9-23; ECF 248 at 12-40. No amount of factual or expert evidence can change those legal conclusions.

Nevertheless, Defendants have submitted expert declarations from Dr. Justin Mankin, ECF 230-5, Dr. Don Fullerton, ECF 230-2, and Professor Harold Koh, ECF 230-8. None of those declarations identify any disputed fact that is *material* to Counts I or II. Indeed, Dr. Mankin expressly

disclaims offering any opinion about when New York may regulate or impose liability for global greenhouse gas emissions causing in-state harm—the precise issue before the Court. Mankin Decl. ¶ 9. Dr. Fullerton opines on economic effects and labels New York's action here "not an economic regulation," Fullerton Decl. ¶ 53, a legal conclusion not fit for expert testimony and one that conflicts with Second Circuit precedent, *see City of New York*, 993 F.3d at 92-93. And Professor Koh likewise presents improper legal opinions and opinions on facts of which he has no first-hand knowledge or special expertise. Koh Decl. ¶¶ 10, 12.

Although the Court need not address the substance of the declarations at this stage, the declarations submitted by Dr. Mankin and Dr. Fullerton also contain myriad flaws both in their methodologies and in their conclusions. For example, Dr. Mankin's declaration mistakenly presents the current state of heavily-debated science relating to his made-for-litigation attribution theories as a scientific "consensus," and Dr. Fullerton's declaration fails to consider real-world reactions by companies faced with billions of dollars in retroactive penalties. Plaintiffs therefore reserve the right to challenge the declarations if this case proceeds past partial summary judgment.[1]

Dr. Mankin, Dr. Fullerton, and Professor Koh's declarations should be stricken under Rules 401, 403, and 702(a) because they are improper evidence for resolving the cross-motions for partial summary judgment presently before the Court. At a minimum, the declarations should be

---

[1] Plaintiffs presently move to strike Dr. Mankin's, Dr. Fullerton's, and Professor Koh's declarations solely upon relevancy grounds under Federal Rules of Evidence 401, 402, and 702(a). Defendants have yet to present the expert reports and related disclosures required by the Federal Rules of Civil Procedure before the admission of expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs preserve all other objections to these declarations and any future expert reports or testimony from Dr. Mankin, Dr. Fullerton, and Professor Koh, including, but not limited to, other challenges under Federal Rules of Civil Procedure 26 and 38, Federal Rule of Evidence 702, and *Daubert* regarding qualifications, reliability, methodology, and any other grounds that may become appropriate if this case proceeds past the current summary judgment briefing.

disregarded in resolving those motions because they do not—and given their myriad flaws, could not—create a genuine dispute of material fact sufficient to defeat summary judgment.

## Background

### A.     New York's Act and procedural history.

New York's Climate Change "Superfund" Act ("Act"), N.Y. Env't Conserv. L. §§ 76-0101, *et seq.*, attempts to impose $75 billion in retroactive liability on a select group of energy producers for the purported impacts of global greenhouse gas emissions in New York. The Act's penalty scheme is not focused on greenhouse gas emissions originating from New York; rather, it expressly imposes liability for greenhouse gas "emissions attributable to all fossil fuel extraction and refining *worldwide*." *Id.* § 76-0101(8) (emphasis added).

The parties have filed cross-motions for partial summary judgment on Counts I and II of Plaintiffs' complaint, which allege that the Act is precluded under the U.S. Constitution and preempted by the Clean Air Act. *See* ECF 216, 217, 230. In support of their cross-motion for summary judgment, Defendants submitted the declarations of Justin Mankin, ECF 230-5, Don Fullerton, ECF 230-2, and Harold Koh, ECF 230-8.

### B.     The Mankin declaration.

Defendants retained Dr. Mankin to submit a declaration in support of New York's opposition to Plaintiffs' motion for partial summary judgment and in support of New York's cross-motion. Mankin Decl. ¶ 1. Importantly, however, Dr. Mankin states that his declaration "does not seek to provide any opinion of the various legal requirements under the Act, such as the conditions upon which the State of New York may regulate or impose consequences on fossil fuel companies that caused in-state harm." *Id.* ¶ 9. Nor does he "review any specific proposed attribution methods that the New York State Department of Environmental Conservation may apply in the future in developing or adopting regulations to implement the Act." *Id.* ¶ 10; *see also id.* ¶ 23. Instead, his

declaration purportedly "explain[s] the different types of emissions that climate scientists consider in connection with attributing greenhouse gas emissions to companies that extract or refine and then sell fossil fuels" and "explain[s] the methodological approaches scientists take in making attributions of particular climate-change harms from the greenhouse gas emissions traceable to particular fossil fuel extractors or refiners." *Id.* ¶ 7. In particular, Dr. Mankin provides his opinions about a complex, multi-step "end-to-end climate damage attribution" theory. *Id.* ¶ 34. This theory goes beyond attributing climate change to greenhouse gas emissions or attributing greenhouse gas emissions to particular companies; rather, it seeks to "estimate[ ]" a "link" between emissions attributable to an individual company and specific weather events at a specific location. *Id.* ¶ 40. By his own description, Dr. Mankin's multi-step "chain of causality" requires that he "connect[] changes in emissions to changes in greenhouse gas concentrations; changes in such concentrations to changes in warming; changes in warming to changes in extremes and hazards; and changes in hazards to consequent damages." *Id.* ¶ 34; *see also id.* ¶ 31 (Figure 1). He does not purport to have applied that multi-step analysis to any facts relevant to this case, nor does he claim that it was applied by the Legislature, or that it is required by New York's Act. He simply claims that it could be done.

### C. The Fullerton declaration.

Defendants retained Dr. Fullerton to address the economic effects of New York's Act and to "address statements made by" Plaintiffs "in their complaints and motions for summary judgment." Fullerton Decl. ¶¶ 7, 10. Dr. Fullerton claims that his opinions "are based on information and materials commonly accepted by economists." *Id.* ¶ 8.

The gravamen of Fullerton's declaration is his opinion that the Act imposes a one-time, retroactive penalty that constitutes a "fixed cost"; and that this fixed cost will not increase fossil fuel prices, alter fossil fuel production, or otherwise affect energy producers' decisions. *Id.* ¶¶ 10,

17-18. In his view, the billions of dollars in penalties required by the Act will simply be absorbed by the assessed energy producers and their shareholders, with no additional burdens or consequences on energy producers, their customers, or the energy market. *Id.* ¶¶ 10, 17-19. Based upon these opinions, Dr. Fullerton concludes that "the Act is not an 'economic regulation', as defined and understood by economists." *Id.* ¶ 10; *see also id.* ¶ 29.

Dr. Fullerton acknowledges that a "possible exception" to his conclusion exists "where a large fixed cost may affect company operations," *id.* ¶ 14 n.4, such as where "a fixed cost is so large that a company goes out of business," *id.* ¶ 21. But Dr. Fullerton asserts that the Act's $75 billion in penalties is "relatively small" and "will not disrupt" the operations of "large oil companies." *Id.* ¶ 21. Dr. Fullerton also acknowledges "expectations of fossil fuel companies about future liability" if New York or other States were to enact other laws imposing additional multi-billion-dollar penalties. *Id.* ¶ 24. But Dr. Fullerton dismisses those concerns, stating that "economists have no generally accepted theory about how firms and individuals form expectations." *Id.* Without any further support or analysis, he concludes "that expectations about future liability have no definitive impact on predictions about the economic effects of the Act." *Id.*

**D.     The Koh declaration.**

Defendants retained Professor Koh "to opine on international law, multilateral agreements, and United States climate policy." Koh Decl. ¶ 10. Professor Koh provides his opinion on the history of international climate agreements and the United States' current, "ongoing intergovernmental climate negotiations" and "ongoing diplomacy and foreign affairs." *Id.* ¶ 34. Based upon these opinions, Professor Koh "conclude[s] that the [Act] is consistent with international environmental law and agreements." *Id.* ¶ 36.

**Argument**

Only relevant evidence is admissible. *See* Fed. R. Evid. 402. In determining whether to consider testimony offered as expert testimony, courts must assess whether that testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Irrelevant evidence does not assist the trier of fact: "Expert testimony that is not probative of a fact in issue is irrelevant and inadmissible." *Carmichael v. City of New York*, 34 F. Supp. 3d 252, 265 (E.D.N.Y. 2014) (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 60 (2d Cir. 2002)); *see also Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 542 (S.D.N.Y. 2024) (evidence that is not relevant is "non-helpful" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993))); Fed. R. Evid. 403 (excluding otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). Further, it is well established that an expert is not permitted "to opine on questions of law," *Am. Empire Surplus Lines Ins. Co.*, 743 F. Supp. 3d at 542 (citation omitted); that is solely the province of the Court.

This Court should strike Dr. Mankin's, Dr. Fullerton's, and Professor Koh's declarations. Defendants have "the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). None of these declarations are relevant to the issues involved in the parties' motions for summary judgment. Moreover, although the Court need not address the substance of the

declarations at this stage, both Dr. Mankin's and Dr. Fullerton's declarations rely upon flawed analyses that Plaintiffs reserve the right to challenge if this case proceeds beyond summary judgment.

**I.     Dr. Mankin's declaration is irrelevant and should be stricken.**

   **A.     Dr. Mankin's declaration is not relevant to the issues involved in the parties' cross-motions for summary judgment.**

The Court should strike Dr. Mankin's declaration because it is irrelevant to the purely legal questions before the Court. Plaintiffs have moved for summary judgment only on Counts I and II of their complaint, which cover the issues of whether the Act is precluded by the U.S. Constitution and preempted by the Clean Air Act. These claims turn on questions of the permissible reach of state law under the U.S. Constitution's structure and the Clean Air Act. They do not turn on the validity of the methodologies that Dr. Mankin describes as "[c]limate attribution science." Mankin Decl. ¶ 40.

As explained in Plaintiffs' summary judgment briefing, the Second Circuit has already answered the purely legal questions that are dispositive in this case. *See City of New York*, 993 F.3d at 90-100. Attempting to impose liability for global greenhouse gas emissions "is simply beyond the limits of state law" under the U.S. Constitution. *Id.* at 92; ECF 216-1 at 10-14; ECF 248 at 13-18. Likewise, "the Clean Air Act . . . does not authorize" New York to impose liability for greenhouse gas emissions originating beyond New York's borders. *Id.* at 100; *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 487-88 (1987); ECF 216-1 at 20-23; ECF 248 at 34-36.

Dr. Mankin's opinions cannot change this precedent or its application to New York's Act. In other words, Dr. Mankin's opinions about whether science can link specific emissions from a specific company to a specific climate-related event in a specific location (which it cannot, as noted below) are irrelevant to whether New York has the authority to impose liability for global

7

greenhouse gas emissions. Indeed, in *City of New York*, neither the Second Circuit nor the trial court considered any expert testimony to address that purely legal question. *See* 993 F.3d 81; *City of New York v. BP PLC*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018). Moreover, Dr. Mankin himself affirms that he offers no opinion regarding "the conditions upon which the State of New York may regulate or impose consequences on fossil fuel companies that cause in-state harm," the very question before the Court in the pending cross-motions for summary judgment. Mankin Decl. ¶ 9. Having disclaimed any opinion on that issue, Dr. Mankin's testimony cannot assist the Court in deciding it.

Additionally, Dr. Mankin's declaration does not purport to use any methodology or reach any conclusion that could possibly assist the Court. In his own words, he does not "review any specific proposed attribution methods that the New York State Department of Environmental Conservation may apply in the future in developing or adopting regulations to implement the Act," nor does he "offer[] an opinion on how the New York State Department of Environmental Conservation will or should determine a responsible party's share of the costs imposed by the Act." *Id.* ¶¶ 10, 23. Instead, he simply explains his views about what he calls "end-to-end attribution," with no apparent connection to the Act's provisions, how those provisions operate in practice, or the Department of Environmental Conservation's plan to implement the Act against energy producers. He does not claim his methods or opinions will be used by the Department of Environmental Conservation, and his opinions could not possibly have any bearing on the Act's liability scheme because the Act itself already defines the "responsible part[ies]" upon whom it will impose liability and the total amount of liability it will impose. N.Y. Env't Conserv. L. § 76-0101(6), (21). Put simply, Dr. Mankin's observations about the so-called "end-to-end attribution" could not assist the Court in resolving the parties' pending cross-motions for summary judgment on purely legal

questions of constitutional and statutory interpretation. *Cf. Carmichael*, 34 F. Supp. 3d at 266-68 (excluding expert analysis that, even if technically sound and even where there was a relevant fact dispute, failed to meaningfully address the central factual questions in dispute).

Instead of assisting this Court, Dr. Mankin's declaration appears to be aimed at addressing some of the policy concerns that have been raised about New York's Act. *See, e.g.*, N.Y. State Assemb., June 7, 2024, Chamber Debate, 2023-24 Legislative Session, at 313 (June 7, 2024), https://perma.cc/WF4Z-ZNPY (Assembly Member Simpson questioning bill sponsor Assembly Member Dinowitz about whether there is "some kind of evidence" to determine whether "a company" is "responsible" for a particular climate "disaster" that would justify the law "putting responsibility . . . on a number of companies" for "a lot of money"). Dr. Mankin's declaration details his view that greenhouse gas emissions attributable to particular companies could be linked to climate-related impacts at the state level. *See, e.g.*, Mankin Decl. ¶ 23; *see also id.* ¶¶ 7 ("I . . . explain the methodological approaches scientists take"), 10 ("consensus-based science *can* . . . trace state-level harms back to particular emissions"). But such policy arguments and advocacy positions have nothing to do with expert work and do not assist the Court in resolving the parties' pending cross-motions for summary judgment.

Because Dr. Mankin's declaration is irrelevant to the legal questions presently before the Court, and because his scientific theories cannot cure the Act's constitutional and statutory infirmities, his testimony is irrelevant, improper, and should be stricken.

**B.**     **Dr. Mankin's declaration relies on defective methodology.**

Although the Court need not consider the substance of Dr. Mankin's report to resolve this motion, Plaintiffs intend—and reserve the right—to challenge Dr. Mankin's analysis, methodology, and conclusions if this case proceeds beyond partial summary judgment.

Most notably, Dr. Mankin's declaration misrepresents the current state of the literature concerning "attribution science." Dr. Mankin's declaration claims that there is "consensus" that "science can . . . trace state-level harms back to particular emissions." *See* Mankin Decl. ¶ 10 (emphasis omitted); *see also id.* ¶¶ 22, 40. That is, he says it is possible to "trace[] particular emissions (like those from a company) to particular harms (like those endured by the State of New York)"—what he calls end-to-end attribution. *Id.* ¶ 10. But contrary to Dr. Mankin's declaration, there is *no* current scientific consensus supporting his claim that the methods he describes can determine whether a particular weather event (e.g., storm, heat wave, flood) was caused or made more extreme by man-made emissions, much less that any such event is attributable to emissions from a specific company's fuels.

The Intergovernmental Panel on Climate Change ("IPCC") expressly recognized the nascent, unconfirmed status of this theory in its Sixth Assessment Report (2021). Critically, the IPCC concluded that "[s]cientists cannot answer directly whether a particular event was caused by climate change, as extremes do occur naturally, and any specific weather and climate event is the result of a complex mix of human and natural factors." IPCC, AR6, Chapter 11: Frequently Asked Questions, FAQ 11.3, 1611, https://perma.cc/47AR-AV74. For that reason, "the usefulness or applicability of available extreme event attribution methods for assessing climate-related risks remains subject to debate." IPCC, AR6, Chapter 12, 1864 (2021), https://perma.cc/DKC4-8DDW (internal citation omitted). Further, commentators have noted that attribution science studies do "not meet any evidentiary standard for the admission of expert testimony" because they "are skewed in favor of a finding of climate change contribution" and are "not directly verifiable." Matthew C. Wickersham & Briana Matusovsky, *The Evidentiary Admissibility of Extreme Weather Event Attribution*, 53 Rutgers L. Rec. 123, 126 (2025). That is especially true of the "end-

to-end" attribution theory that Dr. Mankin proposes here, which takes "several logical leaps" beyond extreme weather event attribution to try to link specific weather events to specific emissions from the sales of products by a specific company (ignoring emissions created by users of the company's products). *Id.* at 154.

In fact, Dr. Mankin's attribution methodology was, in a co-author's words, "motivated by" climate "legal cases and 'polluters pay' bills." Joy Utech, *Q&A with Dartmouth Researchers Who Found Companies Caused $28 Trillion Climate Damage*, The Dartmouth (May 6, 2025), https://perma.cc/SR3D-GME7; *see also id.* (Dr. Mankin claiming that his research will be "essential to informing the implementation of the superfund laws" and for the climate "liability cases going forward"). Dr. Mankin stated that he hopes his efforts will help "to hold corporate actors" accountable for "climate emissions" and has volunteered to help "provid[e] these attributions globally for free" so that "different people in different places can evaluate their rightful claims to restitution." *See* Justin S. Mankin & Marc Willers KC, Scientific Evidence in Corporate Climate Litigation, *Corporate Climate Litigation: Global Perspectives and Legal Tactics*, Brit. Inst. of Int'l and Compar. L., at 30:50-31:30 (July 1, 2025), https://perma.cc/XNQ9-D5PK (downloaded using Spotify); *see also* Thomas Lewton, *The Secret Weapon That Could Finally Force Climate Action*, New Scientist (Jan. 6, 2026), https://perma.cc/D45K-3N88, archived at https://perma.cc/K99C-XNNG (quoting Dr. Mankin for proposition that he believes climate litigation may be "necessary" to force policy preferences that the democratic political process and international negotiations have rejected).

**II.     Dr. Fullerton's declaration is irrelevant and should be stricken.**

> **A.     Dr. Fullerton's declaration is not relevant to the issues involved in the parties' cross-motions for summary judgment.**

The Court should also strike Dr. Fullerton's irrelevant declaration. Dr. Fullerton's declaration asserts that "the Act is not an 'economic regulation', as defined and understood by economists, because it does not intervene in the private actions of firms and individuals to change their behavior." Fullerton Decl. ¶ 10. But—even if these assertions are true, which they are not—his assertions are irrelevant to the key legal issues before this Court and should be stricken for the following reasons.

*First*, to the extent Dr. Fullerton is attempting to offer expert testimony on the legal question whether the Act constitutes a regulation, that testimony is improper. He may not opine on legal issues or conclusions. *See, e.g.*, *Hygh*, 961 F.2d at 363; *Am. Empire Surplus Lines Ins. Co.*, 743 F. Supp. 3d at 542.

*Second*, Dr. Fullerton's opinion on a legal question already decided by binding Second Circuit precedent is particularly improper and irrelevant. *See City of New York*, 993 F.3d at 92 (holding that seeking substantial compensation for global greenhouse gas emissions in effect regulated those emissions); ECF 248 at 26-33. The Second Circuit has held that imposing liability under state law for global greenhouse gas emissions *is*, by definition, a form of regulation that intrudes upon an area of exclusive federal authority. *Id.* at 92. Its holding was based on decades of Supreme Court precedent and the "economic reality" and "common sense" that "'regulation can be effectively exerted through an award of damages,' and [that] 'the obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" *Id.* at 92-93 (citation omitted). The Second Circuit therefore held, as a matter of law, that "a substantial damages award like the one requested by the City would effectively regulate [energy

companies'] behavior far beyond New York's borders." *Id.* Defendants cannot escape that *legal conclusion* by invoking Dr. Fullerton's (incorrect) opinion. Dr. Fullerton's opinion of the Act, or what economists consider to be a regulation as a matter of *theory*, does not (and indeed cannot) override the Second Circuit's holding as a matter of *law* that applies directly to New York's Act in this case.

*Third*, whether Dr. Fullerton or economists generally consider the Act to be "economic regulation" is also irrelevant because it has no bearing on whether New York can impose liability for global greenhouse gas emissions under the U.S. Constitution or the Clean Air Act. *See City of New York*, 993 F.3d at 92; ECF 248 at 26-33. That is a question of New York's authority (or lack thereof) to use its law in an area traditionally governed by federal law. As the Second Circuit recognized in *City of New York*, imposing liability for global greenhouse gas emissions is "simply beyond the limits of state law." 993 F.3d at 92.

*Fourth*, to the extent Dr. Fullerton is attempting to offer expert testimony on the impact of New York's Act on prices or consumers, none of that testimony is relevant to Plaintiffs' suit, including Plaintiffs' standing. *See generally* ECF 248 at 6-10. Plaintiffs have submitted uncontro-verted declarations by their members attesting to the costs those members are already suffering or will soon suffer by virtue of being targeted by the law, which are sufficient to establish Article III standing. *See* Durbin Decl. ¶¶ 18-22, ECF 216-4; Meyer Decl. ¶¶ 17-19, ECF 216-7; Sweeney Decl. ¶¶ 14-18, ECF 216-13; Pokalsky Decl. ¶¶ 15-22, ECF 216-10; Torrence Decl. ¶¶ 10-22, ECF 216-14; Swarup Decl. ¶¶ 15-25, ECF 216-12; Cochrane Decl. ¶¶ 13-21, ECF 216-3; Martini Decl. ¶¶ 13-21, ECF 216-6; Jarboe Decl. ¶¶ 14-25, ECF 216-5; Parrish Decl. ¶¶ 13-23, ECF 216-9; Slone Decl. ¶¶ 15-22, ECF 216-11.

**B.      Dr. Fullerton's declaration relies upon defective methodology.**

As with Dr. Mankin's declaration, the Court need not address the substance of Dr. Fullerton's declaration to resolve this motion. And Plaintiffs intend—and reserve the right—to challenge Dr. Fullerton's analysis, methodology, and conclusions if this case proceeds beyond partial summary judgment.

For example, Dr. Fullerton's core assumption—that the Act imposes only a "fixed cost" with zero behavioral effects—is oversimplified and unrealistic. As other commentators have pointed out, retrospective penalties can and do affect a company's reputation, access to capital, insurance costs, and future business decisions. *Cf., e.g.*, Jonathan Klick, *States Looking for Free Lunch with Climate Superfund Laws*, Wash. L. Found. (Oct. 1, 2025), https://perma.cc/PKL8-6U83. Dr. Fullerton's analysis ignores these real-world factors that energy producers must take into account and that would impact their business decisions. In particular, he ignores that the Act changes expectations: Companies now expect that New York and other States will enact additional laws imposing additional penalties for global greenhouse gas emissions. Dr. Fullerton's only response is that, in his view, "no empirical model has provided definitive evidence that one theory is generally better than other theories about expectations." Fullerton Decl. ¶ 24. He therefore "conclude[s] that expectations about future liability have no definitive impact on predictions about the economic effects of the Act." *Id.* ¶ 24. His conclusion is unsupported and fails to grapple with energy producers' real-world expectations and makes the rest of his analysis unrealistic and unreliable.

**III.    Professor Koh's declaration should be stricken because it is irrelevant and includes improper legal opinions.**

The Court should strike Professor Koh's declaration as well. Professor Koh's declaration is essentially a legal brief opining on questions of law and the meaning of legal documents such

14

as treaties. But such opinions are not the proper subject of an expert declaration and are irrelevant in any event. To begin with the latter point, whether or not the Act is "consistent with international environmental law and agreements," as Professor Koh asserts, Koh Decl. ¶ 36, is not relevant to whether the Act is consistent with our constitutional structure. A state action could be technically consistent with international treaties yet still tread on the foreign affairs power exclusively vested in the federal government. *See, e.g.*, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373-74 (2000) (finding that state law stood as an "obstacle to the accomplishment of" federal government's objectives in dealing with a foreign nation). And here, the Second Circuit has already held that the regulation of global greenhouse gas emissions is reserved to the federal government by virtue of the uniquely federal interests at play. *City of New York*, 993 F.3d at 92 ("Because [the suit] therefore implicates the conflicting rights of states and our relations with foreign nations, this case poses the quintessential example of when federal common law is most needed." (citation omitted)).[2]

This Court should also strike Professor Koh's improper testimony "because it contains impermissible legal conclusions and factual assertions not based on personal knowledge." *Haight v. NYU Langone Med. Ctr., Inc.*, 2016 WL 29628, at *5 (S.D.N.Y. Jan. 4, 2016). For example, Professor Koh—who is not a government official—opines on the United States' "ongoing intergovernmental climate negotiations" and "ongoing diplomacy and foreign affairs" without purporting to have personal knowledge or expertise concerning the current administration's foreign policy decisions and strategy. *Id.* ¶ 34. And again, Professor Koh's opinions on international laws and

---

[2] Defendants suggest that Professor Koh's declaration is permissible under Federal Rule of Civil Procedure 44.1, ECF 242 at 4, but the cross-motions for summary judgment do not ask this Court to make any "determin[ation]" about "a foreign country's law," Fed. R. Civ. P. 44.1. The only law at issue here is New York's Act and U.S. law. The Act's interference with U.S. foreign policy is an issue of U.S. law, not an issue of international law or the law of another country.

agreements are not relevant to the United States' foreign policy positions. The declaration thus seeks to usurp the Court's role by interpreting the law and applying it to the facts—an exercise reserved exclusively for the Court. Such testimony offers no assistance to the Court and should therefore be excluded. *See Am. Empire Surplus Lines Ins. Co.*, 743 F. Supp. 3d at 542.

**Conclusion**

For the reasons stated above, Plaintiffs respectfully request that the Court strike the declarations of Dr. Mankin, Dr. Fullerton, and Professor Koh.

Dated: February 13, 2026

Jennifer B. Dickey*
Kevin R. Palmer*
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
Telephone: (202) 463-5337

*Counsel for Plaintiff the Chamber of Commerce of the United States of America*

Ryan Meyers*
American Petroleum Institute
200 Massachusetts Avenue, NW,
   Suite 1200
Washington, DC 20001
Telephone: (202) 682-8000

*Counsel for Plaintiff American Petroleum Institute*

Tawny Bridgeford*
National Mining Association
101 Constitution Avenue, NW
Washington, DC 20001
Telephone: (202) 463-2629

*Counsel for Plaintiff National*

Respectfully submitted,

*/s/ Steven P. Lehotsky*
Steven P. Lehotsky*
Scott A. Keller*
Michael B. Schon*
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW,
   Suite 700
Washington, DC 20001
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: steve@lkcfirm.com
Email: scott@lkcfirm.com
Email: mike@lkcfirm.com

Andrew B. Davis*
LEHOTSKY KELLER COHN LLP
750 Rialto Blvd.
   Suite 1-250
Austin, TX 78735
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: andrew@lkcfirm.com

Jared B. Magnuson*
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
Telephone: (512) 693-8350
Fax: (512) 727-4755

*Mining Association*

Heather Briccetti Mulligan*
The Business Council of New York
State, Inc.
111 Washington Avenue
  Suite 400
Albany, NY
Telephone: (518) 465-7511

*Counsel for Plaintiff The Business
Council of New York State, Inc.*

**admitted pro hac vice*

Email: jared@lkcfirm.com

Meredith R. Pottorff*
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: meredith@lkcfirm.com

Yvonne E. Hennessey
Richard S. Hartunian
Barclay Damon LLP
80 State Street
Albany, NY 12207
Telephone: (518) 429-4293
Email: YHennessey@barclaydamon.com
Email: RHartunian@barclaydamon.com

*Counsel for Plaintiffs the Chamber of Com-
merce of the United States of America,
American Petroleum Institute, National
Mining Association, and The Business
Council of New York State, Inc.*

17

**Certificate of Service**

I, Steven P. Lehotsky, certify that on February 13, 2026, the foregoing was filed electroni-

cally via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Steven P. Lehotsky*
Steven P. Lehotsky